[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 14, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-12660
Non-Argument Calendar

_____

D. C. Docket No. 02-20969-CV-DLG

RACHEL MCCOOL, as Personal Representative of
the Estate of Donald McCool, deceased, on behalf
of the Estate and on behalf of the survivors of
Decedent, Donald McCool, individually,
DONALD M. MCCOOL,

Plaintiffs-Appellants,

versus

BRIDGESTONE/FIRESTONE NORTH AMERICAN TIRE,
LLC, a foreign corporation, f.k.a.
Bridgestone/Firestone, Inc.,
FIRESTONE TIRE AND RUBBER COMPANY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 14, 2007)

Before DUBINA, CARNES and HULL, Circuit Judges.

PER CURIAM:

Plaintiffs Rachel McCool, as representative for her husband's estate, and her son, Donald M. McCool, appeal the district court's order entering final judgment in favor of defendants in this products liability action. After review, we affirm.

## I. BACKGROUND

### A. Accident

Donald L. McCool and his son were riding in a pickup truck when McCool lost control of the vehicle, it crossed into the median and rolled over, killing McCool and injuring his son. McCool's widow and son ("plaintiffs") filed this lawsuit in Florida state court, alleging that the fatal accident was caused by one of the pickup's Firestone steel belted radial tires when the tread and outer steel belt suddenly separated from the main body of the tire. Plaintiffs asserted claims against defendants for negligent and defective design and manufacture and failure to warn.

### B. Discovery and MDL Proceedings

Defendants removed the action to the Southern District of Florida based on diversity jurisdiction. The action was then transferred to the Southern District of Indiana for consolidated multi-district litigation ("MDL"). While in MDL,

2

plaintiffs retained William Nonnamaker, a tire failure analyst, as their expert regarding the alleged defect in the tire.

Nonnamaker produced a Rule 26 expert report, prepared August 28, 2002, in which Nonnamaker opined, after inspecting the tire, that it had failed because defendants failed "to design in an adequate safety margin and/or to maintain tight enough tolerances in the manufacture of the tire . . . ." The report explained that "built in weakness between the two steel belts along both edges caused separations to develop" as the tire aged and that this condition "combined with the centrifugal force of the rotation of the tire caused the tread and outer steel belt to come completely off of the balance of the tires." The report concluded that the tread separation "created a vehicle handling control problem . . . ." The report also contained a series of observations from Nonnamaker's visual inspection of the tire, including measurements and notations about the tire's condition. However, the report did not explain how these notations supported Nonnamaker's conclusion that the tire's design had failed to include an adequate safety margin. Nor did the report identify any scientific studies, industry testing or peer-reviewed articles to support Nonnamaker's opinion.

On September 25, 2003, defendants deposed Nonnamaker. During the deposition, Nonnamaker stated that an adequate safety margin would have been to

include "nylon overlays" or "nylon cap plies" and that defendants' failure to include nylon cap plies in McCool's steel belted radial tire caused the tire to fail. The only support for Nonnamaker's opinion cited during his deposition was the fact that other tire experts held the same opinion. Nonnamaker admitted that he had no experience in the design of steel belted radial tires or of nylon cap plies in such tires, had never tested nylon cap plies in tires, had not published his theory about the protective effect of nylon cap plies in steel belted radial tires and was not aware of any other peer-reviewed publications regarding such a theory. Although Nonnamaker mentioned that he had seen test data that indicated that nylon cap plies improved the performance of tires, he did not bring that test data to his deposition or list the data in his Rule 26 report. Nonnamaker also indicated that he had not reviewed any documentation of a comparison between tires with and without nylon cap plies that showed that nylon cap plies reduced tread belt separation and that he could not identify any tests of steel belted radial passenger tires that showed that nylon cap plies prevent tread belt separation.

Defendants moved for summary judgment. The MDL court granted summary judgment on all of plaintiffs' claims except the defective design claim. With regard to this claim, the MDL court noted that Nonnamaker's testimony regarding the tire's lack of a nylon cap ply was "barely" sufficient evidence to

support a jury finding of defective design, as follows:

> As for the plaintiffs' design defect claim, however, Mr. Nonnamaker testified that the subject tire was defective because it did not have a nylon cap ply and that "nylon cap plies would have meant that the tire would not have failed when it did. It would have given additional service life." While Mr. Nonnamaker provides little, if any scientific basis for this conclusion, that is, nonetheless, his expert testimony, and, in the event it survives Firestone's inevitable <u>Daubert</u> challenge, it would be sufficient evidence, albeit barely, from which a jury reasonably could conclude that the tire was defective and that the defect caused the tire failure.

The MDL court remanded the action to the Southern District of Florida for further proceedings on the remaining design defect claim.

## C.     <u>Daubert</u> **Motion and Response**

The district court set trial for the two-week trial calendar beginning February 6, 2006. On October 20, 2005, defendants filed a <u>Daubert</u> motion, seeking to exclude Nonnamaker's expert testimony because Nonnamaker was not qualified to testify on the alleged design defect and Nonnamaker's expert opinion was unreliable. On November 4, 2005, one day before plaintiffs' response to the <u>Daubert</u> motion was due, plaintiffs sought an extension of time. The district court granted plaintiffs' request and directed plaintiffs to file their response within thirty days, that is, by December 8, 2005.

On December 5, 2005, plaintiffs sought an additional extension through December 14, 2005. Plaintiffs' motion noted that defendants did not oppose an

5

extension through December 12. By December 8, the district court had not ruled on plaintiffs' motion for an extension of time.

Nonetheless, plaintiffs did not file their response to the Daubert motion on the court-ordered due date of December 8. Instead, plaintiffs attempted to file their response on December 12. Although the clerk's office accepted plaintiffs' Daubert response and stamped it filed, the docket clerk crossed out the word "filed" and wrote the word "Rec'd" in its place and did not enter the Daubert response on the docket. Also on December 12, plaintiffs filed a motion for a Rule 104(a) hearing on defendants' Daubert motion.

On that same day, the district court denied plaintiffs' motion for an extension of time and ordered plaintiffs to show cause for failing to comply with the court-ordered deadline of December 8. Plaintiffs responded that they had moved for an extension of time and had met the extended deadline agreed to by opposing counsel.

After conducting a show cause hearing, the district court entered an order in which it explained that the parties could not amend court-ordered filing deadlines and concluded that plaintiffs had not filed their Daubert response by the court-ordered deadline of December 8. The district court also found that plaintiffs' Daubert response had never been filed, as reflected on the docket, and stated that it

6

would not consider unfiled pleadings.  The district court noted that plaintiffs'

Daubert response had been received by the clerk's office on December 12, after the

court-ordered deadline.  Thus, the district court concluded that plaintiffs' Daubert

response would have been untimely even if it had been filed.  The district court

ordered plaintiffs to retrieve all copies of the unfiled Daubert response from the

clerk's office.  It also set a Rule 104 hearing on defendants' Daubert motion for

January 17, 2005 and denied as moot plaintiffs' motion for a Rule 104 hearing.

**D.     Rule 104 Hearing**

At the Rule 104 hearing, plaintiffs called Nonnamaker to testify.  While

Nonnamaker was answering questions about his work experience in the 1950s, he

paused long enough that the district court noted it on the record, as follows:

> Q.     In order to address the judge's concern, Mr. Nonnamaker,
> would you be more specific as to the periods of time that you worked
> at Firestone from '51 to '56, if you could detail each position that you
> had and what you did in each position.
> A.     At 1951 to 1956, initially I was involved with the - -
>                                    (Pause.)
> Q.     I'm sorry, did you say something?
> A.     No, I'm sorry, I did not.
>         THE COURT:     The record should reflect that there's a long
> pause.  I'm not sure what's happening.
>         MR. CABEZAS:   I don't know what's happening either,
> Judge.
>
> BY MR. CABEZAS:
> Q.     Are you okay, Mr. Nonnamaker?
> A.     Yes.

7

Q. Do you understand my question?
A. I do.

Plaintiffs' counsel then repeated his question, and Nonnamaker answered it.

Plaintiffs' counsel posed another question about Nonnamaker's employment in the

1950s. While answering, Nonnamaker again paused, prompting counsel to request

a brief recess. The district court granted the request, noting for the record that

"after questions are responded to in part, there's a long pause." After a seven

minute recess, plaintiffs' counsel stated that plaintiffs were ready to proceed, and

Nonnamaker continued testifying until lunch without further incident.

Nonnamaker testified that he had performed over 3,000 failure analyses of

tires. Nonnamaker stated that a "failure analysis" of a tire involved conducting a

"visual and tactile examination" of the tire under bright lights and then recording

all the significant conditions and markings that would indicate the reason for a

failure. Nonnamaker also testified that a steel belted radial tire experiences tread

belt separation because of "the absence of a nylon overlay to assist in protecting

against the sharp edges of the steel belt" and opined that the absence of a nylon

overlay or nylon cap plies was a defect in the design of McCool's steel belted

radial tire.[1] In forming this opinion, Nonnamaker testified that he relied upon his

--------

[1]Nonnamaker also explained that a nylon overlay or nylon ply is made up of individual nylon cords that run around the tire over the top of the steel belts and under the tread. According to Nonnamaker, the nylon overlay provides a transition between the stiff steel and the flexible

experience in examining tires and "the tests that have been conducted by various companies that support that a nylon overlay improves the tire life."  However, the tests to which Nonnamaker referred were not introduced into the record.

During the hearing, defendants objected to Nonnamaker's references to the tests, arguing that they had not been disclosed in his Rule 26 report or produced during his deposition.  Plaintiffs' counsel explained that the tests to which Nonnamaker referred had been given to Nonnamaker in other litigation, were no longer in his possession, and were the subject of confidentiality orders.

After a lunch recess, plaintiffs' counsel informed the district court that, after speaking with Nonnamaker, both he and Nonnamaker had concerns about Nonnamaker's memory and his competency to testify, as follows:

> MR. CABEZAS:  He has shared with me that he stopped taking new cases since June of last year, since June of 2005, and between then and now, this is the first time that he has testified in open court and he's concerned that, you know, the stress related to that may have brought even more to light his concerns with his slowing down mentally, his ability to recall things, and I'm concerned with the competency of his testimony.  So I would - - if you want me to elicit that information from him directly, I will, but that's essentially what he shared with me, and I'm concerned about our - - my client's rights going forward.
>
> THE COURT:  Well, Mr. Nonnamaker, you have heard the attorney summarize your feelings or thoughts.  Do you concur with the statement he just made?

---

rubber at the edge of the steel belts, by "absorbing the transmission from the stiffness of the steel to the rubber in which it's encased."

9

THE WITNESS: I certainly do and I apologize.

THE COURT: No, you don't have to apologize. All sorts of things happen in the course of human events and so I don't want you to feel sorry. I appreciate you bringing it to the Court's attention. In essence, are you concerned about your ability to be able to recall and give fair and accurate testimony about the events that you have previously testified about?

THE WITNESS: Right. I found that it was a great surprise to me this morning when it occurred and I have no explanation except that I was just having problems recalling, which tended to smooth out some, but I'm still concerned, and concerned for the people that are involved, for my client that I'm working for, but primarily for the people that he represents.

Plaintiffs' counsel asked for a continuance to permit Nonnamaker to seek medical attention to determine if his ability to testify was impaired. The district court concluded that the hearing should continue because Nonnamaker had indicated that the memory problem had "smoothed out" as he continued testifying, as follows:

THE COURT: Well, I think we should continue with the testimony because as he stated, things appeared to smooth out, as you said, as he went along. Let's just finish the testimony and then Mr. Nonnamaker can consult with any medical authorities that he desires and then we can decide where we are at that time. We only have, as you stated, about 30 more minutes of testimony and so there's no need in suspending testimony at this time, frankly, based upon what I have observed.

Have you had any difficulty prior to today?

THE WITNESS: Nothing like this. It was so minor. It was one of the reasons for, in June, going ahead and deciding to not take any new cases, but I had no problems like this.

THE COURT: Well, you paused a bit early on, but as you continued testifying, I didn't notice any hesitation. Were you experiencing something later on in your testimony?

THE WITNESS: No, it came around but I was very concerned

about the initial problem and what was occurring there.

        THE COURT:     After the initial pauses that I made reference to on the record, did you experience difficulty after that point in time?

        THE WITNESS:  No, it - - everything tended to smooth out.

        THE COURT:     Okay.  All right.  Well, let's continue today and then he can consult with his physicians.

Nonnamaker then corrected one piece of his morning testimony that he said was inaccurate and finished testifying.[2]

During redirect, the district court allowed Nonnamaker as part of a proffer to describe the tests he had relied upon in forming his expert opinion. In so doing, Nonnamaker read directly from an affidavit he had prepared and which had been attached to plaintiffs' unfiled <u>Daubert</u> response, listing various tire industry testing, internal memoranda addressing such testing and deposition testimony of tire industry officials in other litigation discussing such testing.

After Nonnamaker's testimony concluded, plaintiffs' counsel renewed his motion for a continuance based on Nonnamaker's inability to recall certain events. The district court denied the motion, stating "frankly, I didn't note any problem with the issue that you're raising. There may be other problems, but I'm not sure that the methodology, which is the true measure of this proceeding, suffers at all,

---

[2]Before lunch, Nonnamaker had testified that he had never seen a certain videotape relating to testing of tires with and without nylon cap plies. After lunch, Nonnamaker testified that he had seen the videotape in connection with another case and had recalled this fact during cross-examination. The district court asked Nonnamaker whether he recalled mis-speaking at any other time during his testimony and Nonnamaker responded that he did not.

11

based on prior depositions, et cetera."

After hearing argument from the parties, the district court took defendants'
Daubert motion under advisement. In response to an inquiry from plaintiffs'
counsel regarding the Daubert response plaintiffs had attempted to file, the district
court indicated that it had held the Rule 104 hearing because plaintiffs had not filed
a Daubert response, as follows:

> MR. CABEZAS: . . . .
> And speaking of that, to the extent that [the district court grants
> defendants' Daubert motion], and in order to preserve the record, I
> would like some guidance from the Court with respect to the Daubert
> response that Your Honor did not allow me to file.
> THE COURT: Daubert response?
> MR. CABEZAS: I had prepared a Daubert response, I don't
> know if Your Honor recalls.
> THE COURT: That's why we had the hearing.
> MR. CABEZAS: I'm sorry?
> THE COURT: This is why we had the hearing.
> MR. CABEZAS: I understand that.
> THE COURT: So that you could introduce everything that
> you wanted to introduce on the subject. That's why we've been here
> all day.

## E. **Daubert Ruling and Summary Judgment**

Following the hearing, plaintiffs filed an emergency motion for leave to
substitute their expert witness and to continue the trial. Plaintiffs argued that,
based on his memory lapses during the Rule 104 hearing, Nonnamaker was not
competent to testify. On February 1, 2006, the district court denied the emergency

12

motion, noting that the case had been pending for nearly four years and was two weeks away from trial and that plaintiffs had an adequate opportunity to develop Nonnamaker's testimony and provide support for his opinion.

On the same day, the district court granted defendants' Daubert motion. The district court found that Nonnamaker was not qualified as an expert on the subject matter of nylon cap ply tires. In addition, the district court concluded that the methodology Nonnamaker used to reach his conclusions was not sufficiently reliable under the Daubert factors and that Nonnamaker's testimony would not assist the jury. The district court also noted, "Mr. Nonnamaker claims that he has seen test results that indicate support for his opinion, but these test results have not been produced or offered into evidence in this case."

Defendants renewed their motion for summary judgment, arguing that plaintiffs could not prove their defective design claim without an expert witness. Plaintiffs filed a motion for a continuance pursuant to Federal Rule of Civil Procedure 56(f) and requested time to find a substitute expert because Nonnamaker was incompetent to testify. The district court denied plaintiffs' Rule 56(f) motion and granted summary judgment in favor of defendants. In so doing, the district court stated that plaintiffs' Rule 56(f) motion was a "conspicuous attempt to move for reconsideration of the Court's February 1, 2006 Order denying Plaintiffs'

13

Emergency Motion for Continuance of Trial." The district court concluded that replacing an expert that already has been excluded on <u>Daubert</u> grounds was not a valid basis for granting a Rule 56(f) continuance. The district court clarified that it had not excluded Nonnamaker because of any memory deficiencies he exhibited during the hearing, but because he was not qualified as an expert and his opinion was not reliable, as follows:

> Contrary to Plaintiffs' assertion, this Court excluded Mr. Nonnamaker's opinion testimony because, <u>inter alia</u>: 1) he lacks the training, education, or experience to offer testimony on the nylon cap ply issue; 2) he has never been involved in the design or manufacture of any steel-belted radial tire; 3) the methodology by which Mr. Nonnamaker reached his conclusions is not sufficiently reliable as determined by the sort of inquiry mandated by <u>Daubert</u>; and 4) Mr. Nonnamaker's theory concerning the nylon cap ply defect has not been tested, and has not been subject to peer review and publication. Mr. Nonnamaker was not excluded due to some "mental" incompetence.

The district court concluded that plaintiffs should not be permitted to shore up their case by finding a second expert before the district court ruled on defendants' summary judgment motion.

## F.    Motion to Alter or Amend Judgment

On February 24, 2006, plaintiffs filed a motion to alter or amend the judgment based on Nonnamaker's incompetency. Affidavits attached to the motion indicated that Nonnamaker recently had been diagnosed with Parkinson's

14

disease and dementia. Plaintiffs also argued that the district court erred when it refused to allow them to file their untimely Daubert response.

On March 30, 2006, the district court denied plaintiffs' motion to alter or amend the judgment. The district court again rejected plaintiffs' argument that it had based its Daubert ruling on Nonnamaker's incompetent testimony and noted that plaintiffs had ignored Nonnamaker's deficiencies apparent in his expert witness report and deposition testimony and the lack of other evidentiary support for Nonnamaker's expert opinion. The district court again clarified the basis for its Daubert ruling, citing each of the reasons for its decision to exclude Nonnamaker, none of which implicated Nonnamaker's newly discovered mental condition. The district court also emphasized that it had not relied solely upon Nonnamaker's hearing testimony in reaching its decision, but also had considered the defendants' motion to exclude and Nonnamaker's prior deposition testimony, which was given when Nonnamaker's competence was not at issue. The district court concluded that "[b]ecause [Nonnamaker] was excluded on Daubert grounds based on Defendant's motion and [Nonnamaker's] prior deposition testimony, he would not have been permitted to testify at trial. As such, his present or future mental condition is immaterial."

With regard to the unfiled Daubert response, the district court reiterated that

15

the written response was not considered because it was untimely. However, the district court explained, plaintiffs had been given an opportunity to present their response at the Rule 104 hearing.

Plaintiffs filed this appeal.

## II. DISCUSSION

### A. Requests for Continuance

On appeal, plaintiffs argue that the district court abused its discretion when it denied their requests for a continuance and to substitute their expert witness, who was incompetent. The "denial of a continuance is within the broad discretion of the district court and will not be overturned unless arbitrary or unreasonable." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1351 (11th Cir 2003) (quotation marks omitted). We consider the following four factors in reviewing a district court's denial of a request for a continuance: "(1) the moving party's diligence in its efforts to ready its case prior to the date set for hearing; (2) the likelihood that the need for a continuance would have been remedied had the continuance been granted; (3) the extent to which granting the continuance would have inconvenienced the court and the opposing party; and (4) the extent to which the moving party might have suffered harm as a result of the district court's denial." Rink v. Cheminova, Inc., 400 F.3d 1286, 1296 (11th Cir.), cert. denied,

16

___ U.S. ___, 126 S. Ct. 419 (2005).

Here, factors one, three and four weigh heavily in favor of the defendants and show that the district court did not abuse its discretion in denying plaintiffs' request for a continuance either before or after the Daubert ruling. The first factor – the moving party's diligence in preparing for the hearing – appears at first blush to militate in favor of plaintiffs. As plaintiffs emphasize, they appeared at the Rule 104 hearing with Nonnamaker, ready to proceed. At the time, plaintiffs were unaware of Nonnamaker's memory problems, and they requested a continuance as soon as the memory problems became apparent during the hearing.

However, as the district court explained, plaintiffs' lack of diligence was not in failing to appear at the hearing, but in failing to prepare adequately for the Daubert challenge by producing evidence indicating Nonnamaker's expert opinion was reliable. It is undisputed that plaintiffs failed to produce such supporting evidence as part of Nonnamaker's Rule 26 report or in response to the subpoena duces tecum attached to the notice of Nonnamaker's deposition. Nor did plaintiffs attempt to introduce such evidence at the Rule 104 hearing.

Indeed, the only support plaintiffs provided for Nonnamaker's expert opinion was Nonnamaker's own testimony that other expert witnesses shared his opinion and that he either was aware of or had reviewed in the past test data or

17

internal memoranda from tire companies discussing test data that he contended supported his views. However, none of the test data or internal memoranda were produced during discovery or submitted to the district court during the hearing. The absence of any documentary evidence, such as peer-reviewed articles or scientific studies or testing, is a particularly glaring omission given that Nonnamaker conducted no studies or testing of his own and had never published his nylon cap ply theory for peer review. In essence, although plaintiffs appeared at the Rule 104 hearing, their entire defense to defendants' Daubert challenge rested on Nonnamaker's seemingly conclusory opinion. This is not the sort of diligent preparation one would expect for a Daubert challenge.

As for the third factor, granting plaintiffs' request for a continuance would have greatly inconvenienced both the district court and the defendants. At the time of the Rule 104 hearing, the case had been pending for four years. Defendants had deposed Nonnamaker and prepared a Daubert challenge based on Nonnamaker's deposition and his Rule 26 report. Discovery had closed, and trial was set to begin on February 6, just three weeks later. Granting plaintiffs' request would have postponed not only a ruling on the Daubert motion, but also the trial. Plaintiffs ultimately sought to designate a substitute expert based on Nonnamaker's diagnoses. As plaintiffs admit, Defendants would have had to invest more time

18

and effort to determine the reliability of this newly designated expert, reviewing a second Rule 26 report, deposing the new expert, and perhaps having to file and defend a second Daubert motion. Thus, trial would have been postponed for a significant period of time.

The fourth factor also weighs in defendants' favor because plaintiffs were not seriously prejudiced by the district court's denial. Despite plaintiffs' insistence that Nonnamaker was incompetent during the Rule 104 hearing and could not properly present the foundation for his opinion, plaintiffs do not identify any material defects in Nonnamaker's Rule 104 hearing testimony resulting from his memory loss. Plaintiffs' only example is Nonnamaker's testimony covering points raised in his affidavit stricken as part of the untimely Daubert response. Plaintiffs contend that Nonnamaker could not remember the details of the issues addressed in his affidavit, which included descriptions of the various testing and internal memoranda Nonnamaker claimed to have reviewed in the past. However, as plaintiffs concede, the district court permitted Nonnamaker to read directly from his stricken affidavit during the hearing and Nonnamaker was asked follow-up questions by both the district court and plaintiffs' counsel.

The problem with plaintiffs' Daubert evidence is not that Nonnamaker had trouble at the hearing recalling the testing and internal memoranda he relied upon

19

in formulating his expert opinion. Rather, the problem for plaintiffs is that they failed to produce the testing and internal memoranda for the district court to evaluate as part of its Daubert analysis. Plaintiffs in effect asked the district court to take Nonnamaker's word that the testing was both scientifically sound and supported his opinion.

The district court excluded Nonnamaker's testimony on the merits, on grounds unconnected to his memory problems during the Rule 104 hearing, and plaintiffs do not challenge the merits of the district court's Daubert ruling on appeal. In short, plaintiffs' case came undone long before the Rule 104 hearing, when plaintiffs chose not to support Nonnamaker's opinion with evidence indicating that it was reliable under the Daubert factors.

We recognize that the second factor – plaintiffs' diligence – appears to weigh in favor of plaintiffs because a continuance of the Rule 104 hearing would have given plaintiffs time to determine the cause of Nonnamaker's memory problems. However, a continuance would not have given plaintiffs time to address the reliability concerns identified by defendants in their Daubert motion and focused on by the district court in its Daubert ruling. These concerns were not related to Nonnamaker's memory lapses during the hearing, but instead related to the lack of any scientific support for Nonnamaker's opinion, such as studies,

testing or peer-reviewed articles. Any shoring up of Nonnamaker's expert opinion with scientific studies, testing data, et cetera, should have been done in the Rule 26 report or during Nonnamaker's deposition. At a minimum, plaintiffs should have attempted to introduce such evidence during the Rule 104 hearing. They did not. Thus, even if the second factor weighed in favor of plaintiffs prior to the district court's Daubert ruling, it did not after Nonnamaker was excluded on the merits. Under all the circumstances of this case, we cannot say the district court's denial of a continuance was arbitrary or unreasonable.

## B.    Daubert Ruling

Plaintiffs also argue that the district court erred in granting defendants' Daubert motion. However, plaintiffs do not challenge the merits of the district court's Daubert ruling. Instead, plaintiffs contend that the district court should not have ruled on the Daubert motion because, due to Nonnamaker's alleged incompetence during the hearing, plaintiffs were unable to defend their position and the district court "did not have competent evidence from Plaintiffs to balance against Firestone's position." This argument is merely a reformulation of plaintiffs' argument that they should have been given a continuance and is rejected for the reasons already discussed.

## C.    Unfiled Daubert Response

Plaintiffs contend that the district court abused its discretion when it refused to permit them to file their untimely <u>Daubert</u> response. According to plaintiffs, their failure to file the <u>Daubert</u> response on the court-ordered deadline was excusable neglect under Federal Rules of Civil Procedure 6(b) and 60(b).[3] Although these rules give a district court the discretion to accept an untimely filing when excusable neglect is shown, they do not <u>require</u> a district court to do so. Therefore, even assuming <u>arguendo</u> that plaintiffs' reason for missing the filing deadline constituted excusable neglect, we cannot say the district court abused its discretion in refusing to permit plaintiffs to file their untimely <u>Daubert</u> response. <u>See</u> <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 896 & n.5, 110 S. Ct. 3177, 3192 & n.5 (1990) (explaining that Rule 6(b) confers discretion on the district court to accept untimely filings, but does not compel the district court to receive them).

**AFFIRMED.**

---

[3]Rule 6(b) states in relevant part:
    When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown <u>may</u> at any time <u>in its discretion</u> (1) with or without motion or notice order the period enlarged if request therefore is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect . . . .
Fed. R. Civ. P. 6(b) (emphasis added).
    Rule 60(b) states in relevant part:
    On motion and upon such terms as are just, the court <u>may</u> relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . .
Fed. R. Civ. P. 60(b)(1) (emphasis added).

22