**FRANCIS EDWARD, Appellant/Plaintiff**
**v.**
**GEC, LLC, Appellee/Defendant**

S. Ct. Civil No. 2017-0025
Supreme Court of the Virgin Islands
August 1, 2017

RHEA R. LAWRENCE, ESQ., Law Offices of Lee J. Rohn and Associates, LLC, St. Croix, USVI, *Attorney for Appellant.*

EUGENIO W.A. GEIGEL-SIMOUNET, ESQ., Law Offices of Wilfredo A. Geigel, St. Croix, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(August 1, 2017)

HODGE, *Chief Justice.* The Superior Court, in a February 14, 2017 order, certified several issues addressed in its prior interlocutory orders for immediate appellate review pursuant to the procedure set forth in title 4, section 33(c) of the Virgin Islands Code. For the following reasons, we affirm in part and reverse in part.

## I. BACKGROUND

GEC, LLC entered into a contract with Louis E. Brown I, Ltd. to provide construction services with respect to a construction project consisting of 102 units in three buildings, a clubhouse, 119 parking spaces, and all necessary utilities. GEC contracted with Genoa, Inc. to provide labor, supervision, and tools with respect to the carpentry work on the project.[1] Although GEC had obtained a Certificate of Government Insurance Coverage under the Virgin Islands Workers Compensation Act ("VIWCA"), Genoa did not do so.

Genoa employed Francis Edward from February 17, 2011, until March 8, 2011, when he suffered an injury while working on the construction project. Although Genoa's contract with GEC had required it to obtain coverage under the VIWCA, Genoa failed to do so, and was thus uninsured at the time of Edward's injury. Edward filed suit against GEC in the Superior Court on April 28, 2011.[2] In its answer, GEC pled several

---

[1] The parties dispute whether a contractor-subcontractor relationship existed between GEC and Genoa, or if Genoa was hired simply as a labor broker.

[2] Although Edward also sued Genoa and another party — Ken Brown — in his complaint, he filed a stipulation for their voluntary dismissal with prejudice on January 9, 2013. Although Edward subsequently moved for the Superior Court to set aside that dismissal, no

defenses — including failure to state a claim — but did not assert that it was immune from liability.

The Superior Court, in a July 30, 2015 order, established a November 30, 2015 deadline for Edward to disclose his expert witnesses. (J.A. 209.) Edward, in fact, had disclosed four experts nearly two years earlier, including Doc Mitchell, his liability expert, who had been disclosed on October 31, 2013. Although it had the opportunity to do so, GEC did not oppose Mitchell or any of the other experts, or challenge their qualifications under the applicable rules of evidence.

GEC filed a motion for summary judgment on October 22, 2015. In its motion, GEC alleged that it was immune from liability under the VIWCA because it was deemed to be Edward's employer due to Genoa's failure to insure itself. *See* 24 V.I.C. § 284(a) ("When an employer is insured under this chapter, the right herein established to obtain compensation shall be the only remedy against the employer. . . ."); 24 V.I.C. § 284(b) ("For the purposes of this section, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to comply with the provisions of this chapter with respect to being an insured employer."). However, GEC failed to file its Certificate of Government Insurance Coverage with the Superior Court — even though such certificate is "prima facie evidence" that an employer is insured under the VIWCA, *see* 24 V.I.C. § 273(d) — or provide any other evidence to support its claim that it was an insured employer. Consequently, the Superior Court, in a July 12, 2016 opinion, denied GEC's summary judgment motion due to its failure to prove that section 284 was applicable to the case.

The Superior Court, in a May 4, 2016 order, set the matter for trial on September 6, 2016. On May 11, 2016, Edward notified Mitchell that the Superior Court had set a September 6, 2016 trial date. However, Mitchell advised Edward, through a May 25, 2016 letter, that he could no longer testify due to "serious health problems." (J.A. 220.) The letter contained a note from Mitchell's doctor, which explained that his health problems were "severe enough to preclude him from being able to travel, sit for a long period [of] time, or provide testimony in any kind of civil or criminal trial." (J.A. 221.)

---

issues relevant to his claims against Genoa and Brown are pertinent to this interlocutory appeal.

Thereafter, Edward retained Terrance Fischer, an expert with qualifications similar to those of Mitchell, who reviewed the items relied upon by Mitchell and independently determined that the opinions in Mitchell's report were sound. On July 26, 2016, Edward filed a motion to substitute Fischer as his liability expert, which GEC first opposed only on grounds that the substitution was untimely, but subsequently filed a motion in limine to exclude both Mitchell and Fischer. The Superior Court initially denied Edward's motion, However, on September 2, 2016, GEC moved to continue the trial date, which the Superior Court subsequently granted. Edward subsequently moved for reconsideration of the substitution order on October 13, 2016, and the Superior Court, in a January 5, 2017 order, granted reconsideration and held that substituting Fischer for Mitchell would not be prejudicial to GEC if Fischer limits his testimony to the conclusions contained in Mitchell's report. However, the Superior Court reserved ruling on the substitution motion pending the outcome of a January 19, 2017 evidentiary hearing to address the qualifications of both Mitchell and Fischer.

On December 14, 2016, GEC filed a renewed motion for summary judgment, to which it attached a copy of its Certificate of Government Insurance Coverage as an exhibit.[3] Shortly thereafter, the Superior Court *sua sponte* ordered GEC to show cause at the January 19, 2017 hearing as to why it should not be sanctioned for its belated production of the Certificate.

At the January 19, 2017 hearing, GEC maintained that its failure to include the Certificate with its first motion for summary judgment was an oversight, but further argued that the immunity provisions of the VIWCA were intended to deprive the Superior Court of subject-matter jurisdiction, and that GEC was therefore entitled to raise the immunity issue at any time in the proceeding. Edward, however, contended that immunity under the VIWCA is an affirmative defense that must be raised at the earliest opportunity, and that GEC waived its immunity defense by failing to assert it in its answer. With respect to the substitution motion, the Superior

---

[3] After the Superior Court denied its first summary judgment motion, GEC requested that it take judicial notice of its Certificate of Government Insurance Coverage, which the Superior Court seemingly did in an October 3, 2016 order. However, the Superior Court subsequently vacated its order on the grounds that it had misspoken and had only intended to take judicial notice of the fact that such certificates are issued by the Virgin Islands Department of Labor. (J.A. 33 n.6.)

Court heard testimony from Fischer, but not Mitchell, who did not appear due to medical issues.

The Superior Court subsequently issued two opinions on January 23, 2017. In the first opinion, the Superior Court determined that the VIWCA does not deprive the Superior Court of subject-matter jurisdiction, but also held that it is also not a waivable affirmative defense. Furthermore, the Superior Court held that the Certificate, without more, did not establish that GEC was entitled to summary judgment because the Certificate only constitutes prima facie evidence of coverage, and a genuine issue of material fact existed as to whether a contractor-subcontractor relationship existed between GEC and Genoa so as to allow GEC to be deemed Edward's employer pursuant to section 284(b).

The Superior Court addressed Edward's substitution motion in its second opinion. Although Mitchell did not testify at the January 19, 2017 hearing and "neither party made arguments as to [his] qualifications as an expert," (J.A. 51), the Superior Court held that it "cannot discern whether he has sufficient knowledge, skill, experience, training or education to qualify as a liability expert in this matter," and therefore held him unqualified. (J.A. 53.) The Superior Court further held that, even assuming arguendo that Mitchell could be qualified as an expert, GEC would not have the ability to cross-examine him at trial, and that it would be "a leap of faith that Terrance Fischer's interpretation and understanding of Doc Mitchell's report is what Doc Mitchell actually meant to state in his report." (J.A. 57.) Consequently, it denied the motion to substitute.

On February 9, 2017, Edward and GEC filed a joint motion for the Superior Court to certify both of the January 23, 2017 opinions for immediate interlocutory appeal to this Court pursuant to title 4, section 33(c) of the Virgin Islands Code. The Superior Court granted the joint motion in a February 14, 2017 order, and certified the following four questions for interlocutory appeal:

> Assuming an employer is insured under the Virgin Islands Workers Compensation Act and is entitled to the immunity protection pursuant to the exclusive remedy provision therein, does that deprive the Superior Court of subject matter jurisdiction or is that an affirmative defense that will be deemed waived if not timely asserted?
>
> When a witness originally designated as an expert becomes unavailable, can the Superior Court permit the substitution of another expert

751

in the original expert's place and permit the substitute expert to simply adopt the opinions of the original expert?

Assuming that the substitution is permissible, . . . [must] the witness originally designated as an expert . . . first be qualified and his methodology be found reliable under *Daubert* before a substitute expert is permitted to adopt and testify to that original expert's opinions?

In assessing the qualifications and methodology of the witness originally designated as an expert that later becomes unavailable to testify at the *Daubert* hearing and trial, is the Superior Court required to look solely at the qualifications and methodology of the substitute expert and permit the substitute expert to draw inferences from the original expert's opinions based on the substitute expert's own interpretation and understanding?

(J.A. 27; 44-45.)

Edward and GEC timely filed their petition for permission to appeal with this Court on February 23, 2017. *See* 4 V.I.C. § 33(c). This Court, in a March 28, 2017 order, granted the petition and issued an expedited briefing schedule. V.I. R. App. P. 6(b).

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"Whenever [a] Superior Court judge, in making a civil action or order not otherwise appealable . . . is of the opinion that the order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of litigation, the judge shall so state in the order" and "[t]he Supreme Court of the Virgin Islands may thereupon, in its discretion, permit an appeal to be taken from the order, if application is made to it within ten days after entry of the order." 4 V.I.C. § 33(c). Since the Superior Court made such a certification in its February 14, 2017 order, and Edward and GEC timely filed their joint petition on February 23, 2017, this Court possesses jurisdiction over this appeal by permission, based on this Court's March 28, 2017 order granting the petition. *Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 607 (V.I. 2012).

■ This Court exercises plenary review of the Superior Court's application of law. *Allen v. HOVENSA, L.L.C.*, 59 V.I. 430, 436 (V.I.

752

2013) (citing *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007)). Although this Court ordinarily reviews the Superior Court's factual findings for clear error, *see In re Estate of Small*, 57 V.I. 416, 421 (V.I. 2012), and its evidentiary rulings for abuse of discretion, *Samuel v. United Corp.*, 64 V.I. 512, 518 (V.I. 2016), this appeal does not arise from a final judgment or an interlocutory order that is appealable as of right, but is only before this Court because the Superior Court certified it for a discretionary appeal because it involves multiple "controlling question[s] of *law*." 4 V.I.C. § 33(c) (emphasis added). Therefore, while this Court has the authority to consider any question that is fairly included in the certification order, *see In re City of Philadelphia Litigation*, 158 F.3d 711, 720 (3d Cir. 1998), we limit our inquiry solely to controlling questions of law — as is provided in the statute authorizing such an interlocutory appeal — and accept, solely for the purposes of this appeal by permission, the facts and circumstances as they were found by the Superior Court.[4] *Cf. Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 972-73 (V.I. 2011).

## B. Effect of VIWCA Immunity

The first question certified to this Court is — assuming an employer is entitled to immunity under the VIWCA — whether immunity deprives the Superior Court of subject-matter jurisdiction, or if it is a waivable affirmative defense. As a threshold matter, we acknowledge that we previously stated "that an employer may voluntarily waive the broad immunity conferred by a workers' compensation statute." *Defoe v. Phillip*, 56 V.I. 109, 135 (V.I. 2012). Because subject-matter jurisdiction may never be waived, *see Brady v. Cintron*, 55 V.I. 802, 815 (V.I. 2011), the acknowledgement that an employer could voluntarily waive VIWCA immunity would necessarily counsel against the requirement being jurisdictional. Yet, since this sentence was "noted in passing and ha[d] no bearing on the outcome of that appeal," it "was merely dictum," and thus not binding. *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 755 n.8 (V.I. 2014). Consequently, we analyze the issue afresh, without viewing the *Defoe* dicta as having conclusively resolved this question.

---

[4] Of course, to the extent any of the parties believe that the Superior Court made clearly erroneous factual findings or abused its discretion with respect to its evidentiary rulings, they may appeal to this Court as of right after entry of a final judgment, at which point this Court would apply traditional standards of review.

■ As both this Court and the Supreme Court of the United States have previously emphasized, "a statute is 'jurisdictional' if 'it governs a court's adjudicatory capacity.' " *First Am. Dev. Group/Carib, LLC v. WestLB AG*, 55 V.I. 594, 611 (V.I. 2011) (quoting *Bowles v. Russell*, 551 U.S. 205, 214, 127 S. Ct. 2360, 168 L. Ed. 2d 96 (2007)). "It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998). That a requirement is mandatory does not, without more, render it jurisdictional. *Henderson v. Shinseki*, 562 U.S. 428, 131 S. Ct. 1197, 1205, 179 L. Ed. 2d 159 (2011). In other words, "courts normally should not conflate subject matter jurisdiction with elements of an action's merits," for this would "eviscerat[e] the distinction between the jurisdictional and merits inquiry" and create the absurd result of "requiring a court to dismiss a claim for lack of jurisdiction whenever the plaintiff does not prevail." *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 79-80 (3d Cir. 2003).

■ To determine whether the Legislature intended for a statute to deprive the Superior Court of subject-matter jurisdiction, this Court considers factors such as whether the statute contains jurisdictional language, and whether courts of other jurisdictions have characterized similar statutory requirements as jurisdictional. *Stewart v. V.I. Bd. of Land Use Appeals*, 66 V.I. 522, 536 (V.I. 2017) (quoting *Rivera-Moreno v. Gov't of the V.I.*, 61 V.I. 279, 300 (V.I. 2014)). "Importantly, a statutory requirement is only jurisdictional if there is a 'clear sign' of the Legislature's intent." *Stewart*, 66 V.I. at 536 (quoting *Rivera-Moreno*, 61 V.I. at 300); *Brooks v. Gov't of the V.I.*, 58 V.I. 417, 426 (V.I. 2013).

■ Here, there is no indication — let alone a "clear sign" — that the Legislature intended for the presence of VIWCA immunity to deprive the Superior Court of subject-matter jurisdiction. The statute codifying VIWCA immunity simply states that workers' compensation is the sole remedy against an insured employer, and does not contain any language that could be construed as stripping a court of subject-matter jurisdiction. *Compare Brooks*, 58 V.I. at 427 (holding statute is not jurisdictional when statute does not mention dismissal or other language commonly associated with jurisdictional statutes), *with Brady*, 55 V.I. at 815 (holding that a statute is jurisdictional when it states that "[n]o action . . . may be commenced in court before [the statutory requirements are met]."). In

754

fact, the statute codifying VIWCA immunity does not even mention courts at all. *See* 24 V.I.C. § 284(a) ("When an employer is insured under this chapter, the right herein established to obtain compensation shall be the only remedy against the employer. . . .").

■ This conclusion is further bolstered by the language the Legislature utilized to determine whether an employer is entitled to immunity under the VIWCA. As we have previously held, "an employer's status as an insured employer under the VIWCA is a mixed question of law and fact" because the Legislature has provided that a Certificate of Government Insurance Coverage only constitutes "prima facie evidence" that an employer is insured. *Island Tile & Marble, LLC*, 57 V.I. at 612 (quoting 24 V.I.C. § 273(d)). "[U]se of the phrase 'prima facie evidence' in a statute 'only establishes a rebuttable presumption,' and 'cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury.' " *Id.* (quoting *Meeker v. Lehigh Valley R.R. Co.*, 236 U.S. 412, 430, 35 S. Ct. 328, 59 L. Ed. 644 (1915)). That the Legislature intended for an employer's status as an insured employer to be subject to fact-finding by a court makes it highly unlikely that the Legislature also intended for the existence of VIWCA immunity to deprive a court of subject-matter jurisdiction. *Mandico v. Taos Constr., Inc.*, 605 So. 2d 850, 854 (Fla. 1992) ("The assertion that the plaintiff's exclusive remedy is under the workers' compensation law is an affirmative defense, and its validity can only be determined in the course of litigation. The court has jurisdiction to decide the question even if it is wrong . . . . [I]t is incongruous to say that while the [trial] court has jurisdiction to make findings of fact, depending on the nature of the findings, it may thereupon lose jurisdiction.").

■ Moreover, interpreting the VIWCA immunity statute to divest the Superior Court of subject-matter jurisdiction would produce absurd results that the Legislature could not have intended. *Fawkes v. Sarauw*, 66 V.I. 237, 248 (V.I. 2017) (citing *Sonson v. People*, 59 V.I. 590, 598 (V.I. 2012)). It is well-established that "[u]nder Virgin Islands law, [a party] is not required to prove a negative." *Bryan v. Fawkes*, 61 V.I. 416, 473 (V.I. 2014). "This is because the Legislature has decreed that '[i]n civil cases the affirmative of the issue shall be proved.' " *Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 544 (V.I. 2015) (quoting 5 V.I.C. § 740(5)).

■ However, it is equally "well-established that a party asserting jurisdiction bears the burden of establishing subject-matter jurisdiction."

*Gov't of the V.I. v. UIW-SIU*, 64 V.I. 312, 323 (V.I. 2016) (citing *Mendez v. Gov't of the V.I.*, 56 V.I. 194, 204 (V.I. 2012)). The requirement that the party asserting jurisdiction must prove the existence of subject-matter jurisdiction is not in tension with the rule that the affirmative of the issue be proved, since a party must typically prove the affirmative to establish subject-matter jurisdiction. *See, e.g., St. Croix, Ltd. v. Shell Oil Co.*, 60 V.I. 468, 474 (V.I. 2014) (plaintiff must prove the defendant transacted business in the Virgin Islands); *Joseph v. Daily News Publishing Co., Inc.*, 57 V.I. 566, 580 n.4 (V.I. 2012) (plaintiff must prove service of process on the defendant); *Mendez*, 56 V.I. at 204 (habeas petitioner must prove he is incarcerated under authority of the Virgin Islands government); *Brady*, 55 V.I. at 814 (plaintiff must prove that a proposed complaint was filed with the Medical Malpractice Action Review Committee). But were we to hold that the existence of VIWCA immunity deprives the Superior Court of subject-matter jurisdiction, plaintiffs would in fact be required to prove a negative in order to establish jurisdiction: that the defendant is *not* an insured employer under the VIWCA. It is doubtful that the Legislature would have intended for this to be the case.

■ Additionally, courts in other jurisdictions have repeatedly interpreted similar workers' compensation immunity statutes as not establishing limits on subject-matter jurisdiction, but simply codifying affirmative defenses which may be waived if not timely asserted. *See, e.g., Brown v. Ehlert*, 255 Mont. 140, 841 P.2d 510, 514-15 (1992) (workers' compensation immunity is not jurisdictional, but a waivable affirmative defense); *Bendar v. Rosen*, 247 N.J. Super. 219, 588 A.2d 1264, 1267 (1991) (same); *Doney v. Tambouratgis*, 23 Cal. 3d 91, 151 Cal. Rptr. 347, 587 P.2d 1160, 1164 (1979) (same); *Mandico*, 605 So. 2d at 854 (same). But notwithstanding the fact that every jurisdiction to consider the question has seemingly held that workers' compensation immunity is a waivable affirmative defense, the Superior Court nevertheless held in its January 23, 2017 opinion that "the immunity protection under the VIWCA . . . is not a waivable affirmative defense" and considered GEC's claim notwithstanding the fact that it had never been pled in its answer. (J.A. 41.) To support its decision, the Superior Court relied solely on language from a prior opinion of this Court holding that "an employer's status as an insured employer under the VIWCA is a mixed question of law and fact." *Island Tile & Marble, LLC.*, 57 V.I. at 612.

 It is not clear why the Superior Court believed that the existence of immunity under the VIWCA being a mixed question of law and fact is relevant to whether VIWCA immunity is a waivable affirmative defense. For example, this Court has already held that the statute of limitations is a waivable affirmative defense, *see Rennie*, 62 V.I. at 536-37, even though that, too, will often constitute a mixed question of law and fact. *See, e.g., Bartleson v. United States*, 96 F.3d 1270, 1274 (9th Cir. 1996); *Mills v. Garlow*, 768 P.2d 554, 555 (Wyo. 1989); *Eaton v. Herman Van Noy Drilling*, 1981 OK 152, 637 P.2d 1249, 1250 (Okla. 1981). Rather, this Court has emphasized that affirmative defenses are all those which must be proven by the defendant, and that affirmative defenses are waived unless pled in an answer.[5] *Pedro v. Ranger Am. of the V.I., Inc.*, 63 V.I. 511, 519 (V.I. 2015); *Maduro v. Am. Airlines, Inc.*, S. Ct. Civ. No. 2007-0029, 2008 V.I. Supreme LEXIS 24, at *8-9 (V.I. Feb. 28, 2008) (unpublished) (collecting cases). Consequently, in response to the first question certified we affirm the portion of the Superior Court's January 23, 2017 opinion holding that the presence of immunity under the VIWCA does not deprive a court of subject-matter jurisdiction, but reverse the portion of the same opinion which held that VIWCA immunity is not a waivable affirmative defense.

## C. Substitution of Expert Witness

The second, third, and fourth questions certified to this Court are largely intertwined. In the second question this Court has been asked to answer whether the Superior Court, after being advised that an expert witness is no longer available to testify, may permit a substitute expert to adopt the original expert's report and testify in place of the original

---

[5] In his brief, Edward correctly notes that Rule 8(c)(1) of the Virgin Islands Rules of Civil Procedure identifies the workers' compensation bar as an affirmative defense that must be pled in an answer. GEC, however, argues that its answer should be construed under the pleading rules in effect at the time it filed its answer, given that the Virgin Islands Rules of Civil Procedure did not go into effect until March 31, 2017.

We agree with GEC that the Virgin Islands Rules of Civil Procedure should not apply retroactively to a previously-pending action when doing so would work an injustice. *See* V.I. R. Civ. P. 1-1(c)(2)(B). However, as applied to this case, Rule 8(c)(1) of the Virgin Islands Rules of Civil Procedure simply restates existing law, since an employer's status as an insured employer must be proven, *see* 24 V.I.C. § 273(d), and this Court has established that affirmative defenses are all those defenses which must be proven by the defendant. *See Pedro*, 63 V.I. at 519.

expert. Assuming the answer to the second question is "yes," the third and fourth questions both pertain to the relationship between the substitution and the *Daubert* standard this Court adopted in *Antilles School, Inc. v. Lembach*, 64 V.I. 400 (V.I. 2016).⁶

 With respect to the second question, neither Francis nor GEC dispute the Superior Court's conclusion, as stated in its January 5, 2017 order, that such a substitution is permissible. We agree. Clearly, the substitution of an expert witness after the deadline set by the court should not be permitted if the reason for the substitution was foreseeable and resulted from a lack of diligence. *See, e.g., McCool v. Bridgestone/Firestone North Am. Tire, LLC*, 222 Fed. Appx. 847, 855 (11th Cir. 2007) (substitution not permitted when plaintiff failed to diligently prepare for *Daubert* challenge); *Leibel v. NCL (Bahamas) Ltd.*, 185 F. Supp. 3d 1354, 1356 (S.D. Fla. 2016) (plaintiff failed to prepare original expert to present an admissible expert opinion); *Smith v. Reynolds Transp. Co.*, No. 3:11-CV-2728-CMC, 2013 U.S. Dist. LEXIS 189826, at *4 (D.S.C. Jan. 23, 2013) (unpublished) (party waited several months to seek substitute expert after discovering original expert could not testify); *Crandall v. Hartford Cas. Ins. Co.*, No. CV N0-00127-REB, 2012 U.S. Dist. LEXIS 173995, at *5 (D. Idaho Dec. 6, 2012) (unpublished) (plaintiff feared original expert's opinions would not withstand summary judgment); *Taylor v. Dean*, No. 5:05-CV-397-OC-10GRJ, 2007 U.S. Dist. LEXIS 102339, at *4-5 (M.D. Fla. Jan. 19, 2007) (unpublished) (substitute expert desired only to make up for poor preparation of original expert). Nevertheless, numerous courts have permitted the substitution of an expert witness when an

---

⁶ In *Antilles School*, this Court recognized that the United States Supreme Court had interpreted Federal Rule of Evidence 702 to provide that

> [a] trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Although the Virgin Islands Rules of Evidence replaced the Federal Rules of Evidence with respect to proceedings in the Superior Court as of March 31, 2017 — and thus will apply to the trial in this case — Virgin Islands Rule of Evidence 702 was modelled after Federal Rule of Evidence 702, and neither this Court nor the Advisory Committee on Rules intended for a standard other than *Daubert* to govern, particularly after this Court in *Antilles School* identified the *Daubert* standard as the soundest rule for the Virgin Islands.

unexpected event occurs that prevents the original expert from testifying at trial. *See, e.g., Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co.,* No. 04-396, 2010 U.S. Dist. LEXIS 103744 (N.D. Ind. Sept. 30, 2010) (unpublished) (original expert was subsequently incarcerated); *Doctor's Assocs. Inc. v. QIP Holder LLC,* No. 3:06-cv-1710 (VLB), 2009 U.S. Dist. LEXIS 119949 (D. Conn. Dec. 23, 2009) (unpublished) (original expert developed a legitimate conflict-of-interest); *Jung v. Neschis,* No. 01 Civ. 6993, 2007 U.S. Dist. LEXIS 97173, at *9, *29 (S.D. N.Y. Oct. 23, 2007) (unpublished) (original expert subsequently developed Alzheimer's disease).

██ In this case, Edward disclosed Mitchell as an expert on October 31, 2013, and immediately sought to confirm Mitchell's availability for trial after being notified of the Superior Court's May 4, 2016 order setting a September 6, 2016 trial date, and sought a substitute expert shortly after being advised that Mitchell could not testify. Since it is undisputed that Mitchell's unavailability to testify was due to an unexpected event — the serious health problems he developed in the intervening three years — and the record contains no indication that Edward did not act diligently thereafter, the Superior Court was permitted to allow Edward to substitute another expert for Mitchell. Consequently, as to the second question certified we affirm the portion of the January 5, 2017 order and January 23, 2017 opinion in which the Superior Court concluded that it possessed the power to permit such a substitution.

██ The third and fourth questions posed by the Superior Court, however, both presuppose that the Superior Court was compelled to conduct a full *Daubert* inquiry in this case. As noted earlier, this Court is not limited solely to the questions as phrased by the Superior Court in its certification order, but may consider other legal questions that are fairly related to or intertwined with the questions so certified. *In re City of Philadelphia Litigation,* 158 F.3d at 720; *Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.,* 40 F.3d 1202, 1207-08 (11th Cir. 1994). Therefore, before answering the third and fourth questions, it is appropriate to consider whether GEC waived its right to challenge Mitchell or Fischer pursuant to *Daubert.*

██ This Court has already held that issues related to the qualification of expert witnesses — including the need to conduct a *Daubert* inquiry — are subject to waiver if not timely asserted by the opposing party. *See V.I. Waste Mgmt. Auth. v. Bovoni Investments, LLC,* 61 V.I. 355, 370-71 (V.I. 2014) (*Daubert* challenge waived when party failed to challenge expert's

qualifications or methodology despite having been provided with the expert report months before trial); *Malloy v. Reyes*, 61 V.I. 163, 183 (V.I. 2014) (witness testified as an expert despite lack of formal qualification by Superior Court when party identified witness as an expert in all materials prior to trial and other party failed to object). This is because "[t]he truth-seeking function of litigation is best served by orderly progression, and because *Daubert* generally contemplates a 'gatekeeping' function, not a 'gotcha' junction." *Alfred v. Caterpillar, Inc.*, 262 F.3d 1083, 1087 (10th Cir. 2001).

Here, the record reflects that GEC did not take any step to exclude Mitchell's testimony on *Daubert* grounds — even though it was aware of him since October 31, 2013 — until almost a month before the scheduled trial date, and then only after Edward already filed his motion to substitute Mitchell with Fischer, at which point GEC was aware that Mitchell could not testify due to health issues. Even then, GEC never challenged Mitchell or Fischer's educational background or other qualifications to testify[7] — a fact which the Superior Court acknowledged (J.A. 51) — but only the reliability of the procedure, method, and technique utilized and the potential prejudicial impact of the testimony.

 Yet even though Mitchell's qualifications had never been challenged, the Superior Court, in its January 23, 2017 opinion, held that Mitchell could not qualify as an expert due to a lack of specialized expertise. (J.A. 51-53.) Even if Mitchell's qualifications are still relevant in light of Edward's attempt to substitute Fischer for Mitchell — which, as we explain below, we do not hold — the Superior Court erred by examining his qualifications *sua sponte* notwithstanding GEC's waiver, especially considering that the record was incomplete with respect to Mitchell's qualifications given that he had not been present to testify at the January 19, 2017 hearing.[8] *V.I. Waste Mgmt. Auth.*, 61 V.I. at 370-71.

---

[7] Although GEC included in its motion in limine a section titled "The Witness Must Be An Expert," GEC nevertheless acknowledged that "Mitchell and Fischer may appear to be in a position (sic) of the requisite degrees to allow them to testify," and instead challenged the admission of the expert opinion on grounds that it "is biased and insubstantial because they have established no factual nor scientific basis to justify any conclusions in this case." (J.A. 436-37.)

[8] Although this Court has held that the requirements of *Daubert* are subject to waiver, it has not yet determined whether the Superior Court may initiate a *Daubert* inquiry *sua sponte* notwithstanding a party's waiver. However, we decline to resolve this issue of first impres-

Thus, the Superior Court erred when it held that Fischer could not testify as a result of Mitchell not having the requisite background to qualify as an expert.

 Likewise, even though GEC challenged Mitchell's methodology in its motion in limine, this challenge has also been waived. As noted earlier, the *Daubert* standard is not intended to reward trial by ambush. *See, e.g., Alfred*, 262 F.3d at 1087. While GEC failed to file any motion objecting to Mitchell's expert testimony when it believed he was still available to testify at trial, it moved to exclude his testimony — and by extension, the substitute testimony of Fischer — one month before the scheduled trial date, and then only when it was placed on notice that Mitchell would not be able to testify due to his health issues. Essentially, GEC used Edward's motion to substitute as a vehicle to resurrect a challenge that otherwise may have already been untimely.

 But even if we were to overlook GEC's waiver, it is clear that *Mitchell's* qualifications and methodology are not in any way relevant to determining whether *Fischer* should be permitted to testify as an expert. Both Rule 702 of the Federal Rules of Evidence, which governed at the time Edward filed his motion to substitute, and Rule 702 of the Virgin Islands Rules of Evidence, which will govern the trial in this matter, provide that

> *A witness* who is qualified as an expert by knowledge, skill, experi-
> ence, training, or education may testify in the form of an opinion or
> otherwise if:
> (a) *the expert's* scientific, technical, or other specialized knowledge
> will help the trier of fact to understand the evidence or to determine a
> fact in issue;
> (b) *the testimony* is based on sufficient facts or data;
> (c) *the testimony* is the product of reliable principles and methods; and

---

sion in this case. While some courts have held that a trial court may initiate a *Daubert* inquiry *sua sponte* even in the absence of a timely motion by a party, even these courts have emphasized that "*sua sponte* consideration of the admissibility of expert testimony is permissible so long as the court has an adequate record on which to base its ruling." *Miller v. Baker Implement Co.*, 439 F.3d 407, 413 (8th Cir. 2006) (citing *Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir. 1998)). Here, the record with respect to Mitchell's qualifications as an expert was certainly not adequate, given that Mitchell never testified at the January 19, 2017 hearing and the parties introduced no evidence with respect to his qualifications.

(d) *the expert* has reliably applied the principles and methods to the facts of the case.

(Emphases added). By its own terms, then, Rule 702 — and by extension, the *Daubert* standard, which was expressly implemented in the current language of Rule 702 — is concerned with the qualifications, knowledge, methodology, and so forth of the witness who will actually testify at trial. Not surprisingly, other courts that have considered challenges to a substitute expert under *Daubert* have focused solely on the qualifications and methodology of the substitute expert, without any regard to those of the original expert. *See, e.g., Stephenson v. Wyeth, LLC*, No. 04-2313-CM, 2011 U.S. Dist. LEXIS 112182, at *8 (D. Kansas Sept. 29, 2011) (unpublished) (defendants' motion to exclude testimony of original expert is moot when court has granted plaintiff permission to substitute experts, and defendants must file motion tailored to substitute expert); *Keffer v. Wyeth*, Civ. No. 2:04-0692, 2011 WL 3843688, at *2 (S.D. W. Va. Aug. 26, 2011) (unpublished) (holding *Daubert* challenge to original expert is moot when plaintiff successfully moves to substitute a new expert, for any *Daubert* challenge to the substitute must be "crafted to the particulars of [the substitute expert's] background and opinions"); *Potoski v. Wilkes Univ.*, Civ. No. 3:06-CV-2057, 2010 U.S. Dist. LEXIS 99731, at *24 (M.D. Pa. Sept. 22, 2010) (unpublished) (rejecting challenge to substitute expert under *Daubert* because "[a]s long as the expert has specialized knowledge and expertise in the field in question . . . he can be qualified as an expert").

Here, the Superior Court, in its January 23, 2017 order, excluded Fischer's expert testimony because he "could not testify to the extent of Doc Mitchell's knowledge and could not pinpoint which specific provisions of these codes Doc Mitchell used to support Doc Mitchell's claims," but "could only testify to the extent of his knowledge and to his own interpretation and understanding of Doc Mitchell's expert report." (J.A. 57.) Importantly, at no point did the Superior Court make any finding that Fischer's own knowledge or expertise failed to meet the standards required by Rule 702 or *Daubert*, and in fact expressly held that it "need not address the qualification of Terrance Fischer as an expert." (J.A. 59.) Therefore, in response to questions three and four as certified, we reverse the portions of the January 23, 2017 opinion in which the

Superior Court denied Edward's motion to substitute based solely on its findings with respect to Mitchell's qualifications and methodology.[9]

## III. CONCLUSION

 We answer the first question certified by the Superior Court in the negative with respect to whether VIWCA immunity goes to subject-matter jurisdiction and in the affirmative as to whether VIWCA immunity is a waivable affirmative defense. As to the second question, we answer in the affirmative, and hold that the Superior Court may permit substitution of one expert witness for another when the original expert witness has become unavailable. Finally, we answer the third and fourth questions in the negative, and hold that the Superior Court need only look to the qualifications and methodology of the substitute expert — provided, of course, that a challenge under *Daubert* has not already been waived. Accordingly, we affirm in part and reverse in part, and remand this matter to the Superior Court for further proceedings consistent with the answers to the certified questions provided herein.

---

[9] It is worth noting that Edward stipulated that Fischer would only testify to the contents of Mitchell's expert report to reduce the potential prejudice to GEC, given that at the time Edward filed his motion for substitution the trial in the matter was scheduled to occur in approximately one month. However, since then, the trial date was continued by the Superior Court — at GEC's request. In other words, it appears that GEC sought to exclude Fischer's expert testimony on grounds that Fischer is unable to adequately testify solely to the four corners of Mitchell's report, when Edward self-limited Fischer's testimony in such a manner to avoid prejudice to GEC from the substitution occurring one month prior to trial — a trial which GEC subsequently moved to have continued to a later date. *Cf. Najawicz v. People*, 58 V.I. 315, 337-38 (V.I. 2013) (party cannot benefit by manufacturing a situation in which it can "attempt to have it both ways").

Because the extent of Fischer's testimony is a matter of discretion and not a pure question of law, this matter is beyond the scope of this appeal by permission, and need not be addressed by this Court. However, on remand, the Superior Court may consider whether the circumstances that led to Edward self-limiting Fischer's testimony only to Mitchell's conclusions may have changed.