IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

August 02, 2024 03:26 PM
SCT-Civ-2023-0045
VERONICA HANDY, ESQUIRE
CLERK OF THE COURT

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

| | | |
|---|---|---|
| **LIMETREE BAY TERMINALS, LLC,** | ) | **S. Ct. Civ. No. 2023-0045** |
| Appellant/Defendant, | ) | Re: Super. Ct. Civ. No. 301/2022 (STX) |
| | ) | |
| v. | ) | |
| | ) | |
| **VINCENT LIGER,** | ) | |
| Appellee/Plaintiff. | ) | |
| | ) | |

On Appeal from the Superior Court of the Virgin Islands
Division of St. Croix
Superior Court Judge: Hon. Jomo Meade

Argued: May 14, 2024
Filed: August 2, 2024

Cite as: 2024 VI 26

BEFORE:     **RHYS S. HODGE**, Chief Justice; **IVE ARLINGTON SWAN**, Associate Justice; and **HAROLD W.L. WILLOCKS**, Associate Justice.

APPEARANCES:

**Carl A. Beckstedt III, Esq.**
Beckstedt & Kuczynski LLP
St. Croix, U.S.V.I.
      *Attorney for Appellant,*

**Warren T. Burns, Esq. (argued)**
Burns Charest LLP
Dallas, Texas

**C. Jacob Gower, Esq.**
Gower Legal LLC
New Orleans, Louisiana
      *Attorneys for Appellee,*

**Ian S.A. Clement, Esq.**
Deputy Attorney General
St. Thomas, U.S.V.I.
      *Attorney for Amicus Curiae Government of the Virgin Islands.*

# OPINION OF THE COURT

**HODGE, Chief Justice.**

¶ 1    Appellant Limetree Bay Terminals, LLC ("Limetree"), appeals from the Superior Court's June 7, 2023 order granting a motion for trial preference filed by Appellee Vincent Liger. For the reasons that follow, we reverse.

## I. BACKGROUND

¶ 2    Liger filed a complaint against Limetree in the Superior Court on August 5, 2022, asserting a cause of action for private nuisance arising out of an alleged "flaring" incident at the oil refinery operated by Limetree that Liger asserts caused oil and other pollutants to land on his residential property. After numerous proceedings not relevant to this interlocutory appeal, Liger filed a "Motion for Preferential Trial Setting" on January 30, 2023, which asserted that he is entitled to a trial within 180 days because he is over 70 years old and entitled to a mandatory calendar preference pursuant to title 5, section 31(b) of the Virgin Islands Code (hereafter the "mandatory preference statute"). Limetree opposed the motion on grounds that the mandatory preference statute violates both the separation of powers principles inherent in the Revised Organic Act of 1954 as well as the Equal Protection Clause codified in the Virgin Islands Bill of Rights. Specifically, Limetree argued that (1) the statutory mandate that a trial must occur within 180 days infringed on the authority of the individual judges of the Superior Court to manage their docket as well as that of the Judicial Branch to establish the rules of practice and procedure to govern proceedings in the courts of the Virgin Islands; and (2) the preference statute violates equal protection guarantees by automatically providing this right to every litigant who is over 70 years of age, without regard to any factor besides age. Liger filed a reply to the opposition on February 23, 2023, which defended the constitutionality of the preference statute.

¶ 3     The Superior Court held a hearing on the preference motion and other matters on April 12, 2023, where it took the matter under advisement.  On June 7, 2023, the Superior Court granted the preference motion and set the trial to commence on July 31. 2023, rejecting all of Limetree's constitutional arguments. Limetree filed an emergency motion to stay the case and to certify the June 7, 2023 order to this Court pursuant to title 4, section 33(c), which Liger opposed on July 8, 2023. The Superior Court granted the certification motion in an August 17, 2023 order, but purported to limit the certification only to one of the constitutional questions:

> Whether subsection (b)(4) of 5 V.I.C. § 31, which restricts when the Court must set a preference trial for an elderly party and further restricts the number and length of continuances to be granted, is unconstitutional under the Virgin Islands Revised Organic Act of 1954 (the Act) because it violates the separation of powers principle?

Limetree filed a petition for permission to appeal with this Court on August 28, 2023, but requested that we consider not just the separation of powers question, but also its equal protection challenge. Liger opposed the petition, in part, on the ground that the Superior Court had not  certified the equal protection question for interlocutory appeal.

¶ 4     On November 9, 2023, this Court granted the petition for permission to appeal with respect to both the separation of powers and equal protection issues.  As this Court explained,

> the plain language of section 33(c) does not provide for certification of *questions*, but rather certification of *orders*. While it is certainly useful for the Superior Court to specify the precise questions addressed in an order that it believes meets the standard for discretionary review under section 33(c), "this Court is not limited solely to the questions as phrased by the Superior Court in its certification order, but may consider other legal questions that are fairly related to or intertwined with the questions so certified." *Edward v. GEC, LLC*, 67 V.I. 745, 759 (V.I. 2017). Because the equal protection claim was adjudicated on the merits in the June 7, 2023 order, we exercise our discretion to consider that issue as part of this appeal as well, and consequently grant the petition.

*Limetree Bay Terminals, LLC v. Liger*, S. Ct. Civ. No. 2023-0045, 2023 WL 7490005, at *1 (V.I.

Nov. 9, 2023) (unpublished). Consistent with this decision, this Court reformulated the issues on

appeal as follows:

> Whether subsection (b)(4) of 5 V.I.C. § 31, which restricts when the Court must set a preference trial for an elderly party and further restricts the number and length of continuances to be granted, is unconstitutional under the Virgin Islands Revised Organic Act of 1954 (the Act) because it violates the separation of powers principle or its guarantees of equal protection?

*Id.* at *2. This Court subsequently issued a scheduling order establishing briefing deadlines, but

noted that it appeared Limetree had not complied with Rule 22(n) of the Virgin Islands Rules of

Appellate Procedure, which provides that

> It shall be the duty of a party who draws in question the constitutionality of any Virgin Islands statute in any proceeding in the Supreme Court to which the Government of the Virgin Islands, or any agency thereof, or any officer or employee thereof, as such officer or employee, is not a party, upon the filing of the record, or as soon thereafter as the question is raised in the Supreme Court, to give immediate notice in writing to the Attorney General of the Virgin Islands of the existence of said question.

Limetree subsequently provided the Attorney General with the notice required by Appellate Rule

22(n), and on January 12, 2024, the Attorney General advised this Court of the Government's

desire to appear as *amicus curiae* in this case to address the constitutionality of the mandatory

preference statute. Ultimately, the Government filed an *amicus curiae* brief agreeing with Limetree

that the mandatory preference statute is unconstitutional on both separation of powers and equal

protection grounds.

## II. DISCUSSION

### A. Jurisdiction and Legal Standard

¶ 5     "Whenever [a] Superior Court judge, in making a civil action or order not otherwise

appealable . . . is of the opinion that the order involves a controlling question of law as to which

there is a substantial ground for difference of opinion and that an immediate appeal from the order

may materially advance the ultimate termination of litigation, the judge shall so state in the order and "[t]he Supreme Court of the Virgin Islands may thereupon, in its discretion, permit an appeal to be taken from the order, if application is made to it within ten days after entry of the order." 4 V.I.C. § 33(c). Since the Superior Court made such a certification in its August 17, 2023 order, and Limetree timely filed its petition on August 28, 2023, this Court possesses jurisdiction over this appeal by permission, based on this Court's November 9, 2023 order granting the petition.[1] *Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 607 (V.I. 2012).

¶ 6     This Court exercises plenary review of the Superior Court's application of law. *Allen v. HOVENSA, L.L.C.*, 59 V.I. 430, 436 (V.I. 2013) (citing *St. Thomas–St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007)). Because this appeal comes before this Court only because the Superior Court certified the June 7, 2023 order for a discretionary appeal, this Court limits its inquiry solely to controlling questions of law—as is provided in the statute authorizing such an interlocutory appeal—and accepts, solely for the purposes of this appeal by permission, the facts and circumstances as they were found by the Superior Court. *Edward,* 67 V.I. at 753.

### B. Constitutionality of the Mandatory Preference Statute

¶ 7     On August 16, 2021, the Legislature enacted Act No. 8468, titled "An Act amending title 5 Virgin Islands Code, subtitle 1, part 1, chapter 3 to grant seniors and the terminally ill preference in civil actions." Act No. 8468 amended title 5, section 31(b) of the Virgin Islands Code to add the following new language to codify this preference:

> (b) **Motion for preference; elderly; medical reasons; time of trial**
>     (1) A party to a civil action who is over 70 years of age or older may petition the court for a preference, which the court shall grant if it finds that the party has a

---

[1] Because the ten-day deadline to file a petition for permission to appeal from the August 17, 2023 order fell on Sunday, August 27, 2023, the time to file the petition automatically extended to Monday, August 28, 2023.  *See* V.I. R. App. P. 16(b); 1 V.I.C. § 171(c).

*Limetree Bay Terminals, LLC v. Liger*      2024 VI 26
S. Ct. Civ. No. 2023-0045
Opinion of the Court
Page 6 of 28

substantial interest in the action as a whole.

(2) A party to a civil action who is over 65 years of age or older may petition the court for a preference, which the court shall grant if the court makes both of the following findings:

(A) The party has a substantial interest in the action as a whole; and

(B) The health of the party is such that a preference is necessary to prevent prejudicing the party's interest in the litigation.

(3) In its discretion, the court may also grant a motion for preference that is accompanied by clear and convincing medical documentation that concludes that the movant, who is a party, suffers from an illness or condition raising substantial medical doubt of survival of that party beyond six months, and that satisfies the court that the interests of justice will be served by granting the preference.

(4) Upon the granting of such a motion for preference for an elderly party, the court shall set the matter for trial not more than 180 days from that date that the elderly party moves for preference. There shall be no continuance beyond 180 days from the granting of the motion for preference except for physical disability of a party or a party's attorney, or upon a showing of good cause stated in the record. Any continuance shall be for no more than 30 days and no more than one continuance for physical disability may be granted to any party.

(5) Upon the granting of such a motion for preference for a terminally ill party, the court shall set the matter for trial not more than 90 days from that date that the terminally ill party moves for preference and there shall be no continuance beyond 90 days from the granting of the motion for preference except for a physical disability of a party or a party's attorney, or upon a showing of good cause stated in the record. Any continuance shall be for no more than 30 days and no more than one continuance for physical disability may be granted to any party.

(6) Unless the court otherwise orders:

(A) A party may file and serve a motion for preference supported by a declaration of the moving party that all essential parties have been served with process or have appeared.

(B) At any time during the pendency of the action, a party who reaches 70 years of age may file and serve a motion for preference.

(C) At any time during the pendency of the action, a party who is diagnosed as terminally ill with less than six (6) months to live may file and serve a motion for preference.

The amended section 31(b) thus creates three statutory preferences: a mandatory preference codified in section 31(b)(1) for all parties in a civil action who are over 70 years of age; a discretionary preference codified in section 31(b)(2) permitting a party over 65 years old whose health necessitates a preference to avoid impairing the party's interest to request a preference; and a discretionary preference codified in section 31(b)(3) permitting a party, regardless of age, to

request a preference upon a showing that the party is not likely to survive beyond six months.

¶ 8    In this case, Liger moved for—and the Superior Court granted—the mandatory preference provided for in section 31(b)(1), based solely on him being 70 years of age or older. Liger did not request, nor did the Superior Court grant, a preference pursuant to sections 31(b)(2) or 31(b)(3). As such, only the constitutionality of section 31(b)(1) is at issue in this case.[2]

¶ 9    Limetree asserts that section 31(b)(1) violates the separation of powers and equal

---

[2] As noted earlier, the only questions before this Court are whether the mandatory preference statute "is unconstitutional under the Virgin Islands Revised Organic Act of 1954 (the Act) because it violates the separation of powers principle or its guarantees of equal protection?" *Limetree Bay Terminals*, 2023 WL 7490005, at *2. While Limetree has not challenged the constitutionality of the mandatory preference statute pursuant to any provision of the United States Constitution, it has nevertheless brought a constitutional challenge because the Revised Organic Act serves as the *de facto* territorial constitution of the Virgin Islands. *See Balboni*, 70 V.I. at 1088-89.

The parties and the Superior Court in this case all correctly treat Limetree's claim as a constitutional challenge. However, in another case, the Superior Court recently described a challenge to a Virgin Islands statute brought pursuant to the Revised Organic Act as a claim that the statute is "inorganic." *See Bryan v. V.I. Gov't Hosp.*, 2021 VI Super 52U ¶¶ 10, 13. The Supreme Court of Guam has long used the term "inorganic" to describe a Guam statute found violative of the Organic Act of Guam, *see, e.g., In re Leon Guerrero*, 2023 Guam 11; *In re Gutierrez*, 1996 Guam 4. We decline to adopt this term because, as this Court recognized in *Balboni*, a charter of government need not bear the name "constitution" to function as a constitution. In addition to needlessly distinguishing between territorial organic acts and territorial constitutions "without any historical or legal basis," Ciolli, 58 IDAHO L. REV. at 246, the word "inorganic" is a malapropism in this context because the word "organic" is being used as the adjective form of the noun "organization." See *People v. Clark*, 53 V.I. 183, 193 (V.I. Super. Ct. 2010) ("An organized territory has an organic act—an act of Congress that establishes its government."). Under traditional rules of English usage and grammar, describing laws as "inorganic" would not mean that these are "laws that are inconsistent with the Organic Act," *Leon Guerrero*, 2023 Guam 11 ¶ 63 (Carbullido, J., concurring); rather, it literally means that the laws are *not organized*. But "not organized" and its variant "unorganized" are themselves terms of art that simply mean that Congress has not authorized a territory's government; importantly, it does not mean that the territorial government or the laws it enacted without Congress's approval are illegal or void. *See* Jon. M. Van Dyke, *The Evolving Legal Relationship Between the United States and its Affiliated U.S.-Flag Islands*, 14 U. HAW. L. REV. 445, 450 (1992) (noting that American Samoa is not an organized territory even though it operates a civil government with an elected governor and elected legislature). Therefore, we will continue our practice of using the word "unconstitutional" to refer to statutes, rules, or other authorities which are inconsistent with either the federal constitution or our *de facto* territorial constitution, the Revised Organic Act.

protection guarantees of the Revised Organic Act of 1954.  As this Court recently explained,

> "[T]he Revised Organic Act serves as the *de facto* constitution for the Virgin Islands," *Bryan v. Fawkes*, 61 V.I. 201, 232 (V.I. 2014), and is interpreted by this Court in the same manner as the court of last resort of a state interprets its own state constitution. *See Balboni v. Ranger Am. of the V.I., Inc.*, 70 V.I. 1048, 1089-92 (V.I. 2019); *see also Puerto Rico v. Rubert Hermanos, Inc.*, 309 U.S. 543 (1940); Anthony M. Ciolli, *Territorial Constitutional Law*, 58 IDAHO L. REV. 206, 240-47 (2022) (summarizing historical and contemporary interpretations of territorial organic acts and treatment as equivalents to state constitutions).

*Payne v. 35th Legislature of the V.I.*, 2024 VI 13 ¶ 11.  Because we ultimately agree with Limetree and the Government that the mandatory preference statute infringes on the separation of powers, we limit our analysis solely to that question.

1. Separation of Powers

¶ 10    The Revised Organic Act "divides the power to govern the territory between a legislative branch, 48 U.S.C. § 1571, an executive branch, *id.* § 1591, and a judicial branch, *id.* § 1611, reflecting that Congress implicitly incorporated the principle of separation of powers into the law of the territory." *Gerace v. Bentley*, 65 V.I. 289, 301 (V.I. 2016) (quoting *Kendall v. Russell*, 572 F.3d 126, 135 (3d Cir. 2009)) (internal quotation marks omitted). As such, the Revised Organic Act "established a system of separation of powers within [the] branches, with executive functions vested in the Executive Branch, legislative functions vested in the Legislative Branch, and judicial functions vested in the Judicial Branch." *Balboni*, 70 V.I. at 1084 (citing *Kendall*, 572 F.3d at 135). "Thus, unless otherwise expressly provided or incidental to the powers conferred, the Legislature cannot exercise either executive or judicial power; the executive cannot exercise either legislative or judicial power; [and] the judiciary cannot exercise either executive or legislative power." *Bryan*, 61 V.I. at 212 (quoting *Springer v. Gov't of the Philippine Islands*, 277 U.S. 189, 201–02 (1928)) (internal quotation marks omitted).

¶ 11    The Revised Organic Act expressly vests the Legislature with the "legislative power and authority of the Virgin Islands," 48 U.S.C. § 1571, which it may exercise with respect to "all rightful subjects of legislation not inconsistent with [the Revised Organic Act] or the laws of the United States made applicable to the Virgin Islands." 48 U.S.C. § 1574(a). "This is consistent with the well-established principle that the power to make the law is the quintessential legislative power." *Save Coral Bay, Inc. v. Bryan*, 76 V.I. 505, 510-11 (collecting cases).

¶ 12    But the Revised Organic Act itself places structural limits on the authority of the Legislature to make law, such as providing that any such legislation cannot be inconsistent with other provisions of the Revised Organic Act. Significantly, the Revised Organic Act—like many state constitutions[3]—expressly vests certain legislative powers exclusively or concurrently with other entities, including other branches of government. Of relevance to this case, section 21(c) of the Revised Organic Act provides that "[t]he rules governing the practice and procedure of the courts established by local law . . . shall be governed by local law or the rules promulgated by those courts." 48 U.S.C. § 1611(c). "[T]his provision, by its own terms, vests both the Virgin Islands Judiciary and the Virgin Islands Legislature with authority to promulgate procedural rules, while only permitting the Legislature to establish substantive rules." *Gerace*, 65 V.I. at 302 (collecting cases). As this Court recently explained,

> The authority of this Court to create procedural rules and substantive law is concurrent with the Legislature. *See* 48 U.S.C. § 1611(c); *Banks v. Int'l Rental & Leasing Corp.,* 55 V.I. 967, 976 (V.I. 2011). However, the allocation of authority between this Court and the Legislature differs depending on whether the law enacted is procedural or substantive. If this Court and the Legislature enact

---

[3] *See, e.g., Supreme Court of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 734 (1980) (characterizing the authority of the Supreme Court of Virginia to establish the Virginia Code of Professional Responsibility as a legislative power rather than a judicial power, even though it is exercised by the judicial branch); *see also Flannery v. Hodge*, No. 22-1508, 2023 WL 154967, at *2 (3d Cir. Jan. 11, 2023) (unpublished).

> inconsistent or conflicting procedural laws, the procedural rule adopted by this Court will always prevail over a procedural statute enacted by the Legislature. *Gerace v. Bentley*, 65 V.I. 289, 303 (V.I. 2016). But if this Court were to establish substantive law—such as through exercising its inherent authority to create common law—a doctrine of law created by this Court must ultimately yield to the substantive statutes adopted by the Legislature. *In re L.O.F.*, 62 V.I. 655, 661 n.6 (V.I. 2015).

*World Fresh Market, LLC v. Palermo*, 74 V.I. 455, 462 (V.I. 2021).

¶ 13    In other words, in the Virgin Islands—like other states and territories where a constitution or organic act vests similar concurrent authority—"conflicts between rules promulgated by the judiciary and rules promulgated by the legislature are resolved in favor of the judiciary" if the rules are procedural, while conflicts are resolved in favor of the Legislature if the statute it enacted creates substantive law. *Gerace*, 65 V.I. at 303; *see also Seisinger v. Siebel,* 203 P.3d 483, 486-487 (Ariz. 2009) ("Although we have occasionally said that procedural rulemaking power is vested 'exclusively' in this Court, this statement is in some respects an oversimplification. . . . [I]t is more accurate to say that the legislature and this Court both have rulemaking power, but that in the event of irreconcilable conflict between a procedural statute and a rule, the rule prevails."); *Hickson v. State*, 875 S.W.2d 492, 493 (Ark. 1994) ("Statutes are given deference only to the extent that they are compatible with our rules, and conflicts which compromise these rules are resolved with our rules remaining supreme." (citing *State v. Sypult*, 800 S.W.2d 402, 404 (Ark. 1990)); *State v. Griffith*, 539 P.2d 604, 610 (Idaho 1975) ("[A]s part of the rule-making power possessed by this Court, . . . the Court may by rule . . . make inapplicable procedural statutes which conflict with our present court system." (citations omitted)); *Winsberry v. Salisbury*, 74 A.2d 406, 414 (N.J. 1950) ("We therefore conclude that the rule-making power of the Supreme Court is not subject to overriding legislation, but that it is confined to practice, procedure, and administration as such."); *Waples v. Yi*, 234 P.3d 187, 191 (Wash. 2010) ("If a statute and a court rule cannot be harmonized,

the court rule will generally prevail in procedural matters and the statute in substantive matters.").

Applying this standard, this Court previously determined that a statute providing for the apportionment of fault is substantive and must therefore control over any contrary rules or procedures adopted by the Judicial Branch, *see Palermo*, 74 V.I. at 462, but that a statute providing for the exclusion of settlement evidence was procedural and therefore could not override Rule 408 of the Virgin Islands Rules of Evidence, which governed the same subject, *see id.* at 467-68.

¶ 14    Limetree asserts that the mandatory preference statute violates the separation of powers principles of the Revised Organic Act. According to Limetree, the mandatory preference statute does not create a substantive right but rather attempts to govern court procedures in a manner inconsistent with both the inherent authority of courts to manage their own dockets as well as numerous provisions of the Virgin Islands Rules of Civil Procedure, including Rules 6, 6-3, 16, and 26. The Government agrees, also arguing in its *amicus curiae* brief that the mandatory preference statute is procedural rather than substantive and that it both conflicts with the Virgin Islands Rules of Civil Procedure and infringes upon the inherent authority of individual judicial officers. Liger, however, contends that the Superior Court correctly characterized the mandatory preference statute as substantive law.

2.    <u>The Mandatory Preference Statute is Procedural Rather Than Substantive</u>

¶ 15    As this Court explained in one of its earliest separation of powers cases,

> A procedural rule regulates the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them. A substantive rule of law, on the other hand, creates and defines the rights, duties, and obligations that are subsequently administered by procedural rules of law. While a procedural rule may affect a substantive right, any such effect must be incidental and may not materially modify a right granted by the substantive rule of law.

*Gov't of the V.I. v. Durant*, 49 V.I. 366, 373 (V.I. 2008) (internal citations and quotation marks

omitted). In its June 7, 2023 order, the Superior Court stated that the mandatory preference statute "is substantive law within the authority of the legislature," J.A. 17, citing to no legal authority to support that holding other than the decision of another Superior Court judge in *In re Refinery Workers Toxic Tort Litig.*, 75 V.I. 200 (V.I. Super. Ct. 2022). The *Refinery Workers* court, however, did not analyze this question: it expressly found that in that case the "[d]efendants conceded that these provisions—which mandate the court to grant a trial preference where the plaintiff is 70 or more years of age and has a substantial interest in the litigation—constitute substantive law." *Id.* at 208. Rather, the defendants in that case only challenged, on separation of powers grounds, the provision of the mandatory preference statute requiring that trial occur within 180 days. In this posture, in addition to being entirely non-binding,[4] the *Refinery Workers* court never analyzed the constitutionality of the trial preference itself, but only its implementation through the 180-day trial deadline.

¶ 16    Here, of course, Limetree challenges the constitutionality of <u>all</u> aspects of the entire mandatory preference statute, and not only the 180-day trial provision. Limetree expressly challenges what the defendants in the *Refinery Workers* case had conceded, arguing that the mandatory preference statute violates the separation of powers by mandating that a court <u>shall</u> grant a trial preference whenever requested by a party to a civil action who is over 70 years of age, effectively compelling a specific result without giving the court any discretion whatsoever to deny it.

¶ 17    Perhaps recognizing the inapplicability of the *Refinery Workers* decision to this case, Liger

---

[4] As we have repeatedly instructed, "the decision of a single Superior Court judge is not binding precedent on other Superior Court judges," let alone a binding precedent for this Court. *In re Q.G.,* 60 V.I. 654, 661 n.8 (V.I. 2014).

relies on the decision in *Swaithes v. Superior Court*, 261 Cal.Rptr. 41 (Cal. Ct. App. 1989), where the California Court of Appeal characterized a preference statute enacted by the California Legislature as substantive. But the *Swaithes* decision is also wholly inapposite to this matter. While Liger correctly notes that the *Swaithes* court described the California preference statute as "a substantive public policy concern," 261 Cal.Rptr. at 1086, the court did not engage in any legal analysis to arrive at that conclusion, let alone explain how the statute is substantive rather than procedural. But there is a reason for that: the California Supreme Court has interpreted the California Constitution as providing *considerably narrower* separation of powers guarantees than the United States Constitution or most state constitutions, to the point where the distinction between substance and procedure is largely irrelevant. As one set of scholars recently explained, "whereas the Federal Constitution imposes prohibitions and grants only limited powers, the California Constitution concentrates power in the legislature and is not designed to 'balance' power among the branches of government." David A. Carillo & Danny Y. Chou, *California Constitutional Law: Separation of Powers*, 45 U.S.F. L. Rev. 655, 668 (2011). Unlike other state legislatures, "[t]he California Legislature possesses plenary lawmaking power except as specifically limited by the California Constitution."[5] *Id.* (emphasis added).

---

[5] This, of course, is different from how the separation of powers operates in much of the rest of the United States, including the Virgin Islands. For instance, the California Supreme Court has held that the promulgation of the rules of evidence is a power that belongs to the California Legislature rather than the courts of California, *see Superior Court v. County of Mendocino*, 913 P.2d 1046, 1051 (Cal. 1996), and that the California Legislature could even establish the rules and regulations governing the admission of attorneys to the California Bar. *See Brydonjack v. State Bar of Cal.*, 281 P. 1018, 1020 (Cal. 1929) (explaining that unlike elsewhere in the United States, "the power of the Legislature to impose reasonable restrictions upon the practice of the law has been recognized in this state almost from the inception of statehood" and that "[t]he right to practice law . . . is the mere creature of the statute . . . subject to the control of the Legislature.") (quoting *Cohen v. Wright*, 22 Cal. 293 (1863)). In fact, the California Supreme Court has even

¶ 18    But even more significantly, the result and reasoning of the *Swaithes* case—which had been decided by California's intermediate appellate court—has recently been called into question because of more recent decisions of the Supreme Court of California.  In *People v. Engram*, 240 P.3d 237, 249 (Cal. 2010), the California Supreme Court declined to enforce a different mandatory preference statute enacted by the California Legislature that required that all criminal cases receive calendar preference over all civil cases, holding that the California Legislature could not "establish[] an absolute or inflexible rule mandating such precedence under all circumstances or in total abrogation of a trial court's ultimate control or discretion over the order in which the cases pending before it should be considered."  Thus, even California has determined that the plenary and largely unrestricted power of the California Legislature does not extend to enacting legislation "totally supplanting a court's discretion to control the order of business before it."  *Id.* at 248.

¶ 19    As noted earlier, under Virgin Islands law "[a] substantive rule of law . . . creates and defines the rights, duties, and obligations that are subsequently administered by procedural rules of law." *Durant*, 49 V.I. at 373.  Moreover, "a procedural rule may affect a substantive right" without being substantive itself, so long as the procedural rule does "not materially modify a right granted by the substantive rule of law." *Id.*  But while "[t]he distinction between a procedural rule and a substantive law is not always easily discernable," *Refinery Workers*, 75 V.I. at 205, some are certainly more discernable than others. As the Supreme Court of Florida recently explained,

> Of course, statutes at times may not appear to fall exclusively into either a procedural or substantive classification. We have held that where a statute contains some procedural aspects, but those provisions are so intimately intertwined with the substantive rights created by the statute, that statute will not impermissibly

admonished litigants not to rely on separation of powers decisions applying the United States Constitution because "the implicit assumption that the separation of powers embodied in the federal Constitution is equivalent to the separation of powers clause of the California Constitution" is simply wrong. *Marine Forests Soc'y v. Cal. Coastal Comm'n*, 113 P.3d 1062, 1075 (Cal. 2005).

*Limetree Bay Terminals, LLC v. Liger*       2024 VI 26
S. Ct. Civ. No. 2023-0045
Opinion of the Court
Page 15 of 28

intrude on the practice and procedure of the courts in a constitutional sense, causing a constitutional challenge to fail. If a statute is clearly substantive and operates in an area of legitimate legislative concern, this Court will not hold that it constitutes an unconstitutional encroachment on the judicial branch. However, where a statute does not basically convey substantive rights, the procedural aspects of the statute cannot be deemed "incidental," and that statute is unconstitutional. Moreover, where this Court has promulgated rules that relate to practice and procedure, and a statute provides a contrary practice or procedure, the statute is unconstitutional to the extent of the conflict. Finally, where a statute has some substantive aspects, but the procedural requirements of the statute conflict with or interfere with the procedural mechanisms of the court system, those requirements are unconstitutional.

*Massey v. David*, 979 So.2d 931, 937 (Fla. 2008). *See also Seisinger*, 203 P.3d at 494 (explaining that "[a]lthough we maintain plenary power over procedural rules, we do not believe that power precludes the legislature from addressing what it believes to be a serious substantive problem . . . through statutory enactment," and observing that such an enactment may "properly [be] viewed as a modification of th[e] substantive common law, not merely as a change in procedure"); *State v. Smith*, 527 P.2d 674, 677 (Wash. 1974) ("Substantive law prescribes norms for societal conduct and punishments for violations thereof. It thus creates, defines, and regulates primary rights. In contrast, practice and procedure pertain to the essentially mechanical operations of the courts by which substantive law, rights, and remedies are effectuated.").

¶ 20      Applying this standard, we agree with Limetree and the Government that the section 31(b) mandatory preference statute establishes a procedural rule rather than a substantive right. Section 31(b) establishes a mandatory deadline by which an affected case must go to trial; it does not create the right to the trial itself. The right to a trial predates section 31(b), and stems from both the United States Constitution and the Revised Organic Act. As such, section 31(b) merely effectuates the constitutional right to a trial by directing the Superior Court to provide the trial within 180 days of a request being made by a litigant who is 70 years of age or older. This, of course, is the

hallmark of a procedural rule.

¶ 21    Notably, the arguments in Liger's own brief support this construction: he asserts that the Revised Organic Act "guarantee[s] the fundamental rights that all Virgin Islands enjoy, as enshrined in Section 3 of the Revised Organic Act, such as the right to due process, the equal protection of the laws, the right to a jury in a civil case, and the right to petition the government for a redress of grievances," and that "Act 8468 is designed to vindicate these Section 3 rights." (Appellee's Br. 8.)  As noted above, the quintessential characteristic of a procedural statute is one that simply vindicates a substantive right codified elsewhere.  If, as Liger asserts, the purpose of the mandatory preference statute is simply to implement other rights such as the right to a jury trial or to due process, then the mandatory preference statute must necessarily be procedural rather than substantive.[6] *Durant*, 49 V.I. at 373.

¶ 22    The extensive legislative history cited by the parties and the Government also reflects that the Legislature did not intend to enact the mandatory preference statute to create a substantive right, but to control the internal affairs of the Judicial Branch.  Senator Kurt A. Vialet stated that "cases are not flowing through the system the way that they should" and that "it is our job to pass [the Act] and send a message that this body is not pleased with what is presently taking place."

---

[6] At oral argument, Liger's counsel noted that the Sixth Amendment to the United States Constitution likewise implements other rights and has not been described as procedural. What Liger does not recognize, however, is that whether the Sixth Amendment establishes a substantive or procedural right is of only academic interest because all parts of the United States Constitution constitute "the supreme law of the land" that must always be followed. *See* U.S. CONST. art VI cl. 2; *see also* Bradford R. Clark, *Unitary Judicial Review*, 72 GEO. WASH. L. REV. 319, 319 (2003) ("[J]udicial review is a unitary doctrine under the Supremacy Clause that requires courts to treat all parts of the Constitution as 'the supreme Law of the Land' and to disregard both state and federal law to the contrary." (citation omitted)). That, of course, is not true of ordinary statutes, which must be disregarded if violative of a higher authority such as a constitution – such as, for instance, when a legislature enacts a procedural statute that infringes on the constitutional authority of the judiciary.

One of the co-sponsors, Senator Janelle K. Sarauw, emphasized the large backlog of cases in the Superior Court as a reason to enact the legislation. Senator Milton E. Potter even openly acknowledged the procedural nature of the statute, stating that "the judiciary has the ultimate say as to how it chooses to manage its docket, but if nothing else, this bill will send a message that the Legislative branch is concerned [that] the docket is not moving as swiftly as it should." And while Liger correctly notes that several senators did mention the need to assist the elderly, the fact that a statute is designed to assist or benefit a particular group does not, standing alone and without more, create a substantive right; after all, court rules are replete with provisions that provide certain protections for specific groups, such as the children or the disabled, and yet are nevertheless clearly procedural. *See, e.g.,* V.I. R. CIV. P. 5.2(a) (privacy redactions of minors' names); V.I. R. CIV. P. 17(c) (capability of minors, the disabled, and the incapacitated to sue). Because the mandatory preference statute does not create a new right, but simply governs the implementation of existing rights, the Superior Court erred when it characterized it as substantive rather than procedural.

3. <u>The Mandatory Preference Statute Infringes on the Authority of the Judicial Branch</u>

¶ 23     That the mandatory preference statute constitutes procedural rather than substantive law does not end the separation of powers inquiry, however. As noted earlier, the Revised Organic Act provides the Legislature and the Judicial Branch with concurrent authority to establish rules of practice and procedure. The Legislature only infringes on the authority of the Judicial Branch when the Legislature exercises that power to establish procedures that irreconcilably conflict with those established by the Judicial Branch or that otherwise impermissibly interfere with the internal operations of the court system or the authority of individual judicial officers to perform their official acts.

¶ 24     The Superior Court did not consider this question, given its characterization of the

mandatory preference statute as substantive rather than procedural. Nor does Liger attempt to seriously address it either: much of this portion of his brief relies on *United States v. Salerno*, 481 U.S. 739 (1987), and other federal case law on the distinction between "facial" and "as-applied" constitutional challenges. Liger asserts that Limetree has only brought a "facial" challenge to the mandatory preference statute and analyzes the question through the framing of whether "there are 'no set of circumstances' in which the Act would not infringe on the Judiciary's power." (Appellee's Br. 12.)  Rather than address whether the mandatory preference statute infringes on the inherent authority of courts or conflicts with any provisions of the Virgin Islands Rules of Civil Procedure, Liger identifies a small number of areas where the mandatory preference statute might not run afoul of the separation of powers, focusing largely on situations where the Superior Court might have chosen to expedite the trial anyway under some permissible authority.

¶ 25    Liger's argument is unavailing.  As a threshold matter, Liger's attempt to draw a distinction between "facial" and "as-applied" separation of powers challenges ignores the important legal context that this case does not concern the United States Constitution, but rather the Revised Organic Act, the *de facto* territorial constitution for the Virgin Islands. While federal case law may be highly persuasive when interpreting provisions of the Revised Organic Act that were modeled after similar provisions of the United States Constitution or federal law, such federal cases will have little or even no persuasive value when the Revised Organic Act differs from these federal authorities.  *See Bryan*, 61 V.I. at 224-25, 230-34 (declining to apply *Chevron* deference to local Virgin Islands administrative agencies but relying on federal case law to determine the meaning of the term "moral turpitude"). Federal case law pertaining to the powers of Congress to discipline or remove judges from office under the United States Constitution, for instance, is largely irrelevant to whether the Revised Organic Act permits the Legislature to discipline or remove

judges in the Virgin Islands, since the Revised Organic Act omits certain language found in Article I of the United States Constitution pertaining to impeachment and removal. *See Kendall*, 572 F.3d at 136-37.

¶ 26     What Liger overlooks is <u>why</u> federal courts utilize different tests for "facial" and "as applied" challenges in the first place. The different standards employed by the federal courts stem from the constraints of Article III of the United States Constitution, which limit the jurisdiction of the federal courts only to consideration of cases and controversies.  Like the recent concerns about federal courts issuing so-called national or universal injunctions that enjoin government agencies from acting against non-parties as well, the Supreme Court of the United States developed the extraordinarily high standard for succeeding on a "facial" challenge to address the fear that federal courts will exceed their jurisdiction by striking down laws based on constitutional analyses of hypothetical actions that resemble advisory opinions.  *See Richmond Medical Ctr. For Women v. Herring*, 570 F.3d 165, 171-73 (4th Cir. 2009).

¶ 27     Yet this concern is wholly irrelevant to the Virgin Islands context: unlike the federal courts, the courts of the Virgin Islands are not courts of limited jurisdiction organized under Article III and possess the authority to adjudicate more than just cases and controversies. *See, e.g., Simon v. Joseph*, 59 V.I. 611, 629 (V.I.2013); *In re K.J.F.*, 59 V.I. 333, 340 n.6 (V.I. 2013); *Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 565 (V.I. 2012); *Vazquez v. Vazquez*, 54 V.I. 485, 489–90 (V.I. 2010). In fact, it does not appear that this Court has *ever* distinguished between "facial" and "as-applied" challenges based on the Revised Organic Act, rather than the United States Constitution. *See, e.g., Balboni*, 70 V.I. at 1093-1105 (invalidating a statute based on its inconsistency with the Equal Protection Clause of the Revised Organic Act without determining whether the challenge is "facial" or "as applied" or developing different legal tests to distinguish between them). Liger does

not explain why this Court should incorporate this aspect of federal constitutional interpretation into Virgin Islands separation of powers jurisprudence.

¶ 28      But far more importantly, Liger does not provide any legal authority to support his claim that there is a distinction between "facial" and "as-applied" separation of powers challenges in the first place. None of the cases Liger cites to support his claim that courts should apply different legal standards to "facial" and "as-applied" separation of powers claims actually arose in the separation of powers context.  The primary case relied upon, *Salerno*, involved challenges only under the Due Process Clause of the Fifth Amendment and the Eighth Amendment of the United States Constitution, 481 U.S. at 745, and the other cases cited also arose in completely different constitutional contexts.  *See, e.g., Nicholas v. People*, 56 V.I. 718, 751 (V.I. 2012) (Second Amendment); *People v. Rosario*, 62 V.I. 429, 434 (V.I. Super. Ct. 2015) (right to bail).

¶ 29      The failure of any courts to draw distinctions between types of separation of powers challenges is not surprising: unlike claims that a statute violates due process or equal protection, the Supreme Court of the United States, lower federal courts, and state courts of last resort have consistently characterized actions that violate the separation of powers as <u>structural</u> violations of the constitution. *See Plaut v. Spendthrift Farm, Inc*., 514 U.S. 211, 239 (1995) ("[T]he doctrine of separation of powers is a structural safeguard rather than a remedy to be applied only when specific harm, or risk of specific harm, can be identified. In its major features (of which the conclusiveness of judicial judgments is assuredly one) it is a prophylactic device, establishing high walls and clear distinctions because low walls and vague distinctions will not be judicially defensible in the heat of interbranch conflict."); *see also Miller v. French,* 530 U.S. 327, 349-50 (2000); *Landry v. F.D.I.C.*, 204 F.3d 1125, 1131 (D.C. Cir. 2000);  *Kihiu v. State*, No. 02-22-00263-CR, 2023 WL 5114303, at \*2 (Tex. App. Aug. 10, 2023); *Commission on Ethics v. Hardy*,

212 P.3d 1098, 1103 (Nev. 2009).  In fact, it is extraordinarily difficult to envision *any* situation where the same statutory language unconstitutionally infringes on the authority of the Judicial Branch with respect to one party but would not do so in a different case involving another party—either the Legislature had the authority to enact the statute, or it infringed upon the power of the courts.

¶ 30    Here, the mandatory preference statute enacted by the Legislature unquestionably infringes on the inherent judicial power exercised by individual judges. As the Supreme Court of Minnesota eloquently explained,

> Inherent judicial power governs that which is essential to the existence, dignity, and function of a court because it is a court. Its source is the constitutional doctrine of separation of powers as expressed and implied in our constitution. Its scope is the practical necessity of ensuring the free and full exercise of the court's vital function—the disposition of individual cases to deliver remedies for wrongs and justice freely and without purchase; completely and without denial; promptly and without delay, conformable to the laws.
>
> At bottom, inherent judicial power is grounded in judicial self-preservation. Obviously, the legislature could seriously hamper the court's power to hear and decide cases or even effectively abolish the court itself through its exercise of financial and regulatory authority. If the court has no means of protecting itself from unreasonable and intrusive assertions of such authority, the separation of powers becomes a myth. The recognition of these truisms has made the doctrine of inherent judicial power established law in virtually every American jurisdiction. However, as with many legal doctrines, to uphold the existence of inherent judicial power in the extreme case does little to guide us in applying it to the numerous and varied financial and regulatory pressures imposed upon the courts.

*In re Clerk of Lyon Cnty. Courts' Compensation*, 241 N.W.2d 781, 784 (1976) (internal citations omitted).  This Court has long recognized, as one such inherent judicial power, the authority of the courts of the Virgin Islands to exercise discretion over how to manage the cases on their docket. *See, e.g., In re Sheesley,* 70 V.I. 1007, 1023 (V.I. 2019); *Greene v. V.I. Water & Power Auth.*, 67 V.I. 727, 740 (V.I. 2017); *In re N.A.W.*, 61 V.I. 145, 152 n.5 (V.I. 2014); *In re Burke*, 50 V.I. 346, 350-51 (V.I. 2008). This inherent judicial power to manage the docket is not unique to the courts

of the Virgin Islands but is a power "of ancient origin," *Feuerman v. Feuerman*, 667 A.2d 802, 803 (Conn. Ct. App. 1995), that extends to "every court." *Landis v. North American Co.,* 299 U.S. 254 (1936); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 629 (1962); *J.W. Hancock Enters. v. Ariz. State Registrar of Contractors*, 690 P.2d 119, 124 (Ariz. App. 1984) ("[p]olitical scientists have long recognized that the separation of powers doctrine does not forbid all blending of powers, but only is intended to keep one branch of government from exercising the whole power of another branch," and "[c]ourts today also recognize that absolute independence of the branches of government and complete separation of powers is impracticable").

¶ 31     This does not mean, of course, that the Legislature possesses absolutely no authority whatsoever over any aspect of docket management.  After all, the Legislative, Executive, and Judicial Branches are precisely that—branches of a single government—and "scientific, absolute division of power without overlap" is certainly not practical and sometimes not even desirable.[7] *See Matter of E.B.*, 330 N.W.2d 584, 588 (Wis. 1983); *In re S.R.M.*, 988 P.2d 276, 282 (Kan. Ct. App. 1999). For instance, this Court has not only upheld, but repeatedly enforced via writ of mandamus, the statutory directive that the Superior Court rule on a habeas corpus petition "without

---

[7] Indeed, as James Madison long ago made plain,

> It is agreed on all sides that the powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments. [But, t]he political apothegm [of separation of powers] . . . does not require that the legislative, executive, and judiciary departments should be wholly unconnected with each other. . . . Unless these departments be so far connected and blended as to give to each a constitutional control over the others, the degree of separation which the maxim requires, as essential to a free government, can never in practice be duly maintained.

THE FEDERALIST NO. 48, at 308 (James Madison) (Clinton Rossiter ed., 1961).

delay." 5 V.I.C. § 1304; *see, e.g. In re Gillette,* 64 V.I. 440, 444 (V.I. 2016); *In re Fleming*, 56 V.I. 460, 465-66 (V.I. 2012); *In re Elliot*, 54 V.I. 423, 429 (V.I. 2010). In doing so, however, this Court repeatedly emphasized that the statutory requirement that habeas corpus petitions receive expedited consideration did not destroy the discretion of the Superior Court to manage its docket, and expressly emphasized that even seemingly long delays in adjudicating a habeas corpus petition may be permissible, such as in situations where "the petitioner himself is responsible for delays or if delays are occasioned in obtaining necessary records of earlier proceedings," and that compliance with the statute simply requires that the Superior Court act "within a reasonable time" in which "each situation must be considered on its own facts." *Fleming*, 56 V.I. at 465 (internal quotation marks and citations omitted). In other words, the habeas corpus statute does not impair the "free and full exercise of the court's vital function," *Clerk of Lyon Cnty.*, 241 N.W.2d at 784, in that the Legislature does not mandate that the Superior Court always rule a certain way and guides, rather than divests, the Superior Court of its discretion to manage its docket.

¶ 32     But the same cannot be said of the mandatory preference statute. Section 31(b)(1) requires that a court "shall grant" the motion if filed by a party who at least 70 years of age, 5 V.I.C. § 31(b)(1), entirely divesting it of its inherent judicial power to exercise discretion over how to manage the case.[8] Section 31(b)(4) then mandates that "the court shall set the matter for trial not

---

[8] At oral argument, Liger's counsel implied that the mandatory preference statute remains discretionary because a court could exercise its discretion to choose not to rule on a mandatory preference motion. *See* Oral Arg. in *Limetree Bay Terminals, LLC v. Liger*, https://www.vicourts.org/e-_services/media_services/video_archive/may_14__2024_oral_argument__sct-civ-23-45 at 36:20. To the extent Liger asserts that the court could, as part of an intentional and conscious scheme to avoid having to comply with the law, literally just ignore the mandatory preference motion entirely and set its own trial date as if the motion had never been filed, the argument is without merit. A court lacks the discretion to completely ignore a duly filed motion, *see Estate Choc. Hole*

*Limetree Bay Terminals, LLC v. Liger*       2024 VI 26
S. Ct. Civ. No. 2023-0045
Opinion of the Court
Page 24 of 28

more than 180 days from that date that the elderly party moves for preference," 5 V.I.C. § 31(b)(4), again entirely divesting it of its inherent judicial power to schedule the matter. Section 31(b)(4) further prohibits the court from granting any continuance except for physical disability, and even then, limits the court to only granting one such continuance which cannot exceed 30 days. These provisions do not merely guide the Superior Court in how to manage its docket, but instead divest the Superior Court of its discretion entirely and transfers it to any party who is 70 years of age or over and files a motion pursuant to the mandatory preference statute.[9]

¶ 33      In addition to impermissibly interfering with the inherent judicial power of individual judges, the mandatory preference statute further infringes on the authority of the Judicial Branch— and particularly this Court—to exercise its inherent power to manage its own internal affairs. "It

---

*Landowners' Assoc., Inc. v. Cenni*, 2024 VI 20 ¶ 19, and doing so to essentially judicially veto a law through deliberate non-compliance violates multiple provisions of the Virgin Islands Code of Judicial Conduct. *See, e.g.,* V.I.S.Cᴛ.R. 213.1.1; 213.2.2; 213.2.5. That Liger's counsel believes the only way for a court to meaningfully exercise discretion under the mandatory preference statute is to simply ignore a motion requesting application of the mandatory preference statute is perhaps the strongest proof possible that the mandatory preference statute completely divests a court of all such discretion.

[9] At oral argument, Liger's counsel analogized the mandatory preference statute to a statute of limitations, which he asserted likewise divests the Superior Court of discretion. *See* Oral Arg. in *Limetree Bay Terminals, LLC v. Liger*, https://www.vicourts.org/e-services/media_services/video_archive/may_14__2024_oral_argument__sct-civ-23-45 at 44:50. As a threshold matter, Liger is incorrect that statutes of limitations completely and totally divest the Superior Court of discretion, since statutes of limitations are not absolute in that judicially created doctrines such as equitable tolling, the discovery rule, and waiver permit the Superior Court to extend or set aside the limitations period in individual cases under certain circumstances. *See, e.g., United Corp. v. Hamed*, 64 V.I. 297, 305-06 (V.I. 2016) (collecting cases); *Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 536-37 (V.I. 2015) (collecting cases); *Jensen v. V.I. Water & Power Authority*, 52 V.I. 435 (V.I. 2009). And perhaps more importantly, a statute of limitations regulates the conduct of <u>plaintiffs</u> by requiring them to file a complaint within the specified limitations period. The mandatory preference statute, in contrast, expressly prohibits any modification of the 180 day trial date except for a single 30-day continuance for physical disability, and affirmatively imposes nearly all of its obligations on the Superior Court rather than on the parties.

is an inherent power of any court of last resort to develop procedural rules of general applicability for the entire judicial branch." *Gerace*, 65 V.I. at 304 (collecting cases). And as explained earlier, while the Legislature possesses concurrent jurisdiction to develop court procedures, that concurrent jurisdiction does not extend to overruling the procedural court rules promulgated by this Court, for "conflicts between [procedural] rules promulgated by the judiciary and [procedural] rules promulgated by the legislature are resolved in favor of the judiciary." *Id.* at 303.

¶ 34    As Limetree and the Government correctly recognize, several of the rules of practice and procedure promulgated by this Court govern the same subject-matter as the mandatory preference statute. Section 31(b)(1) is inconsistent with Rules 16 and 26 of the Virgin Islands Rules of Civil Procedure, which expressly and unambiguously vest the Superior Court—and not an individual party—with authority over scheduling matters, including determining when trial occurs. Section 31(b)(4) is inconsistent with Civil Rules 6 and 6-3, which permits the Superior Court to grant extensions of time or a continuance of any trial, conference, hearing, or other matter upon a demonstration of good cause, for reasons other than physical disability and without limiting the total number of extensions or continuances or their length.

¶ 35    Liger, perhaps recognizing these conflicts, provides one final reason for this Court to not invalidate the mandatory preference statute on separation of powers grounds: that Limetree "had plenty of unused tools in its toolbelt" that it never utilized prior to raising its constitutional challenge. (Appellee's Br. 15.)  Specifically, Liger asserts that

- Consistent with Rule 6(b), [Limetree] could have moved the Superior Court to move deadlines as warranted upon a showing of good cause.

- Consistent with Rule 6-3, [Limetree] could have moved the Superior Court to reset trial, again upon a showing of Rule 6(b) good cause.

- Consistent with Rule 16, [Limetree] could have moved for the entrance of its

preferred scheduling order, which would have highlighted any actual conflict if the Court were asked to exercise discretion contrary to Act 8468.

- Consistent with Rule 26, if [Limetree] was dissatisfied that the last-minute discovery was being taken despite the trial setting, [Limetree] could have moved for a protective order.

- Consistent with Rules 6-4 or 60, once trial was set, [Limetree] could have asked the Superior Court to reconsider its granting the motion for preference trial, with a factual showing of how the trial setting infringes the power of the Judiciary.

(Appellee's Br. 15-16.)

¶ 36    Liger's claim that Limetree was somehow required to undertake any of these actions as a prerequisite to raising its separation of powers argument wholly lacks merit. This Court has repeatedly held that a litigant need not take actions which are "futile" or would "unnecessarily waste judicial resources" to preserve an issue for appellate review. *See Tip Top Constr. Corp. v. Gov't of the V.I.*, S. Ct. Civ. No. 2014-0006, 2014 WL 571905, at *1 n.1 (V.I. Feb. 14, 2014) (unpublished); *Fleming*, 56 V.I. at 469. This principle is especially important in a case such as this where a party asserts that another party should have done "a futile act to preserve a right not dependent on and only tangentially related to the act." *See NLRB v. Miller Brewing Co.,* 408 F.2d 12, 16 (9th Cir. 1969).

¶ 37    In this case, Liger filed a motion solely pursuant to the mandatory preference statute, without also requesting a discretionary preference under either discretionary preference statute or any pertinent provision of the Virgin Islands Rules of Civil Procedure. As outlined earlier, the mandatory preference statute, by its own express and unambiguous terms, mandates that the Superior Court grant a mandatory preference every time such a motion is filed by a party over 70 years of age; the Superior Court lacks the discretion to deny the preference. 5 V.I.C. § 31(b)(1). The mandatory preference statute further requires that the Superior Court set a trial date for no

later than 180 days from the date the elderly litigant files the motion; the Superior Court lacks the discretion to choose a date beyond the 180-day limit. 5 V.I.C. § 31(b)(4). And while the mandatory preference statute permits the Superior Court to continue that trial, it may only grant a total of one continuance for no longer than 30 days, and only for the reason of physical disability. *Id.* In fact, Liger vehemently argued in his preference motion that the Superior Court lacked *any* discretion at all with respect to any of these matters because "[t]he word "shall" is mandatory" and "does not afford discretion." (J.A. 34.) The only way that any of the motions Liger asserts Limetree could have filed would have been anything other than futile would be if the mandatory preference statute is unconstitutional[10]—and if the statute is unconstitutional, it is not clear why this Court should decline to say so simply because Limetree failed to needlessly expend the resources to file these

---

[10] At oral argument, Liger's counsel asserted that section 31(b)(6) provides the Superior Court with the discretion to rule on these motions. *See* Oral Arg. in *Limetree Bay Terminals, LLC v. Liger*, https://www.vicourts.org/e-services/media_services/video_archive/may_14__2024_oral_argument__sct-civ-23-45 at 23:40. That portion of the statute provides, in its entirety, as follows:

> (6) Unless the court otherwise orders:
> (A) A party may file and serve a motion for preference supported by a declaration of the moving party that all essential parties have been served with process or have appeared.
> (B) At any time during the pendency of the action, a party who reaches 70 years of age may file and serve a motion for preference.
> (C) At any time during the pendency of the action, a party who is diagnosed as terminally ill with less than six (6) months to live may file and serve a motion for preference.

All this language does, however, is provide the Superior Court with limited discretion to regulate when a litigant may file a motion for preference, i.e. to modify the default rules that such a motion may be filed "[a]t any time during the pendency of the action" and that it be accompanied with "a declaration of the moving party that all essential parties have been served with process or have appeared." There is nothing in the plain text of section 31(b)(6), or any other portion of the statute, that provides the Superior Court with discretion to deny a preference motion filed by a party who is 70 years of age or older, or to set a trial date beyond 180 days of the date the motion was filed.

ancillary motions after the Superior Court had already rejected its constitutional arguments on the merits. Consequently, we hold that the mandatory preference statute, section 31(b)(1), violates the separation of powers principles of the Revised Organic Act and is therefore unconstitutional as a matter of Virgin Islands law.

## III. CONCLUSION

¶ 38    The Superior Court committed error when it characterized the mandatory preference statute as substantive rather than procedural, and thus erred when it held that it did not violate the separation of powers guarantees of the Revised Organic Act. Accordingly, we declare the mandatory preference, section 31(b)(1) statute unconstitutional and void as a matter of Virgin Islands law, and reverse the June 7, 2023 order.

**Dated this 2nd day of August, 2024.**

                                        BY THE COURT:


                                        /s/ Rhys S. Hodge_____
                                        **RHYS S. HODGE**
                                        **Chief Justice**

**ATTEST:**

**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**

**By:** /s/ Jahkyda Coakley_____
        **Deputy Clerk II**

**Dated**: August 2, 2024_____